*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

ANNAN and others *against* MERRITT:

**IN ERROR.**

*A,* whose wife was the owner of a piece of land, agreed with *B* to sell it to him for 300 dollars, and to give him a deed of it, with full covenants. Fifty dollars of the purchase money was to be paid down, and the residue, *B* was to secure by bond and mortgage, to be given simultaneously with the execution of the deed. *B* paid the 50 dollars ; and *A* gave a receipt for it, and delivered possession of the land to *B,* who entered and made improvements thereon ; but *A* never executed any deed to *B,* though *B* was ready to give *A* the stipulated security for the balance of the purchase money. *C* and *D,* knowing these facts, combined with *A* to defraud *B* ; and in pursuance of such combination, *A* and his wife executed a deed of the land to *C,* in trust for *D,* who paid the consideration money ; and then *C* brought ejectment against *A.* On a bill in chancery, brought by *B* against *A* and his wife, and *C* and *D,* for a specific performance of the agreement, and an injunction against the action at law, it was held, 1. that chancery would not enforce the agreement against *A* and his wife ; 2. that the rule precluding the interference of a court of chancery, in such case, being intended as a protection to the wife only, *C,* the grantee with notice, had no such protection ; and the relief sought was decreed against him.

Where the form of the decree, in such case, was such as to leave it optional with *B,* to pay the balance of the purchase money, or not, but still required this to be done as a condition of the relief decreed ; it was held, that the decree was not, on this account, erroneous.

Where the decree, in such case, was against *C* only ; yet as the plaintiff, upon the facts in the case, was bound to make both *C* and *D* parties—both having combined in the transaction, and one being the legal, and the other the equitable, owner ;—it was held, that the plaintiff was entitled to costs against *D,* as well as *C.*

Where the bill stated, that *A* agreed to execute with his wife a deed of her land to *B,* with full covenants ; the court found, that that fact was no otherwise proved, than by a receipt given by *A* to *B,* for 50 dollars, stating, that this sum was in part payment of the purchase money of a lot sold to *B,* of which *B* was to have a warranty deed, with full covenants, by giving a bond and mortgage for 250 dollars ; the deed to be sent to *C,* who was to receive the mortgage from *B,* and deliver both to the clerk's office at the same time ; it was held, that such receipt shewed, that *B,* by the agreement between him and *A,* was to have a deed from *A* and his wife of the land in question ; and, consequently, that the facts found, in this respect, supported the facts alleged in the bill.

Where the defendants, in such case, objected to any parol evidence to prove part performance, on the ground, that the parol agreement was merged in the written one contained in the receipt ; it was held, that the receipt, though it specified some of the details of the agreement, was not, itself, the agreement, and consequently, the objection was without foundation.

Where the defendants, in such case, objected to the admission of such receipt in evidence, on the ground that it did not prove the allegation in the bill, that the mortgage was to be given upon the land to be conveyed ; it was held, that this fact sufficiently appeared from the receipt, in connexion with the other facts in the case ; and consequently, the objection failed.

Where the evidence adduced by the plaintiff, in such case, in support of his bill, consisted, mostly, of acts tending to shew a part performance of the agreement by him,—such as money paid, possession taken, improvements made, and money expended—and such evidence was objected to, generally, as inadmissible ; it was held, that such objection was not sustainable.

That part performance will take a case out of the statute of frauds and perjuries, is a position supported by authorities too numerous, and too overpowering, to admit of its being treated as an open question.

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

THIS was a bill in chancery to obtain, from the defendants the title to a certain piece of land in *Greenwich,* called, " the *Byram* lot," and to restrain proceedings at law.

The bill stated the following case. On the 3rd of *June,* 1835, *Samuel Annan* informed the plaintiff, that he was seised in fee, in right of his wife, *Sarah Annan,* and in actual possession of a certain lot of land in *Greenwich,* called " the *Byram* lot," containing about six acres ; which land he offered to sell the plaintiff for 300 dollars, and to execute, with his wife, a deed to him, with full covenants, if the plaintiff would pay him 50 dollars in money, and would, after receiving his deed, execute to *Annan* a mortgage deed of the same, and a bond, secured by such mortgage, for the sum of 250 dollars, the residue of the purchase money. The plaintiff accepted these terms, and thus closed the agreement. It was also agreed, between these parties, that *Annan* should deposite his deed with *James Pine,* who resided within a short distance of the land ; and that the plaintiff, on receipt of such deed, should deposite with *Pine* such bond and mortgage ; and that *Pine* should deliver *Annan's* deed, and the mortgage, to the town-clerk, to be recorded ; and that the plaintiff should thereupon take immediate possession of the land, under said agreement. The plaintiff promptly paid the 50 dollars, part of the purchase money, to *Annan,* who accepted it, and thereupon executed to the plaintiff a receipt, stating, that *Annan* had received 50 dollars in payment on the *Byram* lot, sold to the plaintiff for 300 dollars ; that the plaintiff was to have a warranty deed of the premises, with full covenants, on the plaintiff's giving a bond and mortgage

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

for the sum of 250 dollars; said deed to be sent to *James Pine,* who was to receive the mortgage from the plaintiff, and deliver both to the clerk's office, at the same time.

*Annan* thereupon put the plaintiff into possession of the premises, and authorized him to proceed and erect a dwelling-house for himself thereon, and promised to return to his residence, and, with his wife, *Sarah Annan,* execute said deed of warranty, and forward it to *Pine.* The plaintiff, after taking possession of said land, proceeded to improve it, by cutting the bushes thereon growing, and splitting the rocks, and removing the stone, and preparing to erect a dwelling-house thereon. The plaintiff also purchased large quantities of lumber and other materials, for such dwelling-house, and for that purpose, expended large sums of money. In a reasonable time afterwards, the plaintiff applied to *Pine,* to obtain the deed from *Annan;* and was ready to pay, and offered to secure the residue of the purchase money, and to execute a mortgage deed and bond, according to the agreement, on receipt of said deed of warranty. But *Annan* never sent it to *Pine.*

The plaintiff often requested *Annan* to fulfil his agreement, offering, at the same time, to secure the residue of the purchase money; but *Annan* has ever refused to execute, to the plaintiff, any deed of the premises whatsoever.

During all this time, *Jonas Mead* and *Charles Mead,* well knew of the agreement between the plaintiff and *Annan,* and had knowledge of all the facts above stated, when they occurred. They, nevertheless, a few days after said agreement was made, combined with *Annan* and his wife, to defraud the plaintiff; and, in pursuance of such combination, *Annan* and his wife executed and delivered to *Charles Mead,* a deed in fee of the premises, and, as a consideration, *Jonas Mead* paid to *Annan* a large sum of money; said deed being executed to *Charles* in trust for *Jonas Mead,* his father. And now, *Charles Mead,* claiming under said deed from *Annan* and his wife, is prosecuting, in the superior court, an action at law against the plaintiff, for the recovery of the seisin and possession of the premises.

During the pendency of this bill, the plaintiff filed a supplemental bill, stating, that he had brought a suit against the present defendants, in the court of the vice-chancellor of the

second circuit in the state of *New-York*, setting forth the same agreement, and substantially the same facts, as are stated in his original bill in the present suit, and praying for similar relief; and that, on a hearing before said vice-chancellor, on the bill and answer, on the 2nd of *February*, 1837, the relief sought, was decreed.

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

On the hearing of this cause, in *Fairfield* county, *April* term, 1840, before *Waite*, J., the plaintiff, to prove the allegations in his bill, offered in evidence the depositions of sundry witnesses, who, among other things, testified, That the defendant, *Annan*, on the third of *June*, 1835, came to *Greenwich*, sent for the plaintiff, and told him, that he wanted to sell him the *Byram* lot ; that Deacon *Mead* (one of the defendants,) wanted it, but should not have it: that the plaintiff enquired the price, and also whether there were any incumbrances on the property ; that *Annan* told him there were no incumbrances upon it, and that his price was 300 dollars ; that the plaintiff said, he would buy it, but could pay, at that time, only 50 dollars ; that *Annan* then said : " The place is yours; pay me the 50 dollars, and I will take a mortgage for the balance, and will send down a deed, in eight or ten days ; go, and do with the place as you please ; I always intended it as a poor man's home :" that the plaintiff procured and paid *Annan* the 50 dollars ; and *Annan* thereupon executed and delivered to the plaintiff, a receipt, of which the following is a copy:

" *Greenwich, June* 3rd, 1835.

Received of *Benjamin Merritt*, 50 dollars, in payment on the *Byram* lot, sold to said *Merritt*, for 300 dollars. Said *Merritt* is to have a warranty deed, with full covenants, by giving a bond and mortgage for 250 dollars : the deed to be sent to *James Pine :* said *Pine* is to receive the mortgage from said *Merritt*, and deliver both to the clerk's office, at the same time.                    *Samuel Annan.*"

That *Annan* then went to *Solomon Mead*, who had previously occupied the land as his tenant, and told him, he could not have the lot another year ; that he had sold it to the plaintiff, and had nothing more to do with it: that he also told the plaintiff to take possession of the land, build him a house upon it, and manage it as he pleased : that the plaintiff thereupon entered immediately into possession of the land,

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

put up the fences, cut up the bushes, cut and stoned up a cellar, built him a house upon it, and has, ever since the making of the agreement, continued to occupy it as his own property.

To the admission of the receipt, the defendants objected, because, as they claimed, it did not support the averments in the bill ; and because it was within the statute of frauds and perjuries.   To the other evidence, they objected, on the ground that it appeared, that whatever agreement was made between the plaintiff and *Annan*, was reduced to writing in the receipt ; and that no parol evidence of such agreement could be heard : and further, that no part execution of any such agreement as that set forth in the bill, could be available to entitle the plaintiff to the relief he sought, by obtaining in himself, against the *Meads*, or either of them, a title to the land in question.

The court over-ruled the objections, and admitted the evidence.

The court found the facts stated in the bill to be true, with this qualification, *viz.* that the allegation that *Annan* was to execute, with his wife, a deed of warranty to the plaintiff, was no otherwise proved, than by the receipt given by *Annan* to the plaintiff.

The following decree was made : " That the said *Benjamin Merritt* do, on or before the 1st day of *October*, 1840, pay to the clerk of this court, for the use and benefit of said *Charles Mead*, the sum of 250 dollars, being the residue of the purchase money of said *Byram* lot, and interest : that, provided said payment be so made, by said *Merritt*, said *Charles Mead* shall, on or before the 1st day of *November*, 1840, upon the penalty of 1000 dollars, execute and deliver to said *Merritt* a good and valid deed, in every respect well authenticated, according to the forms of law, thereby releasing, and forever quit-claiming, to said *Merritt*, all right, title, interest, claim and demand, in and to said piece of land, called the *Byram* lot, so by him acquired, by the deed from said *Annan* and his wife ; and that he, the said *Charles Mead*, be enjoined, upon the like penalty, against the further prosecution of his said action of ejectment, so brought by him, to recover the seisin and possession of the premises ; and that said *Charles Mead* be, in the mean time, strictly enjoined against

conveying the premises, otherwise than as aforesaid, or in any way encumbering the same : and that the plaintiff recover of said *Jonas* and *Charles Mead*, his costs, taxed, &c., and that execution issue therefor: and no decree being sought against said *Samuel Annan*, and *Sarah*, his wife, they are dismissed, but without costs."

The defendants, thereupon, filed a motion for a new trial, and a motion in error.

*Hawley*, for the plaintiffs in error, and in support of the motion for a new trial, contended, 1. That the facts set forth in the original bill, do not entitle the plaintiff to the relief granted. In the first place, *Annan's* agreement gave the plaintiff no right to the *fee*, and no right whatsoever, as against Mrs. *Annan*. Chancery would not compel her to convey, nor decree that *Annan* should procure her to convey ; and if it would, such decree would affect *him* only,— not her, nor her lands. *Butler* & al. v. *Buckingham*, 5 *Day* 492. 1 *Pow. on Con.* 60. 124. 1 *Mad.* 311. *Kidd on Awards*, 46, 7. *Newl.* 107. *Davis* v. *Jones*, 1 *New Rep.* 269, 70. *Martin* v. *Dwelly*, 6 *Wend.* 1. The only reason why chancery ever interferes, is, that the land is, by force of the agreement, in equity, the land of the plaintiff; and that the defendant is trustee of the plaintiff. The agreement is considered as giving a right to the land. 1 *Mad.* 289. But here, the fee could never be considered, as against Mrs. *Annan*, as belonging to the plaintiff ; nor could she be regarded as his trustee.

Secondly, Mrs. *Annan* being the owner in fee, under no obligation to convey to the plaintiff, and having a right to convey to any one else, her grantee, *Mead*, has an unimpeachable right to hold. He may hold all that she had a legal and equitable right to convey. If it was subject to no right of the plaintiff, legal or equitable, in her hands, it can be subject to none in his. The plaintiff can have no right as against *Mead*, which he had not as against her ; and no fraud of *Mead's* could give the plaintiff a right, which he had not against her, by force of the contract. *Mead's* efforts to defeat the agreement, surely, cannot give the plaintiff rights greater than those the agreement gave him ;—*i. e.* cannot *create* or *originate* a right or title. The utmost effect such

fraud could achieve, would be, to prevent *Mead's* claiming against a right, which the plaintiff had acquired ; not to confer, or enlarge, a right. Its utmost effect would be, (when the case required the application of the principle,) to nullify *Mead's* deed, leaving the plaintiff just where he stood before. But he had no right to the fee before.

Thirdly, *Mead's* notice of the agreement, was notice merely of the right which the plaintiff acquired by force of that agreement,—*i. e.* notice of an agreement to sell, by one who had no right to sell. Such notice does not prevent the acquisition of title from the one who has the right to sell. Notice of an agreement, which gives no right, certainly does not confer a right. If the plaintiff would, by force of the agreement, be entitled to *Annan's* life estate, (a position denied,) that cannot alter the case. The defendants' interference with that life estate, could not give the plaintiff a right to the *fee.*

2. That the plaintiff derives no aid from the proceedings in *New-York* set forth in his supplemental bill. In the first place, they are no estoppel; for nothing *certain* is found ; and it is not set up by way of estoppel, only as a ground of relief. Secondly, a supplemental bill can furnish no new ground of relief. The original bill must form the basis of the decree. Thirdly, the decree of the *New-York* court is distinct from the original ground of action ; as much so, as a judgment in book-debt is from the original debt. Fourthly, our courts of chancery have no power to execute a decree of the chancery court of another state. Fifthly, the decree of the *New-York* court is open to the same objections as the original bill.

3. That the court has not found, either expressly, or by necessary implication, the agreement set forth in the bill. The court find, that the agreement is no otherwise proved, than by the receipt. This, at most, is only a statement of *evidence*, not a finding of *facts*. But aside from this objection, the evidence does not prove the agreement stated : it does not shew *by whom* the deed was to be executed.

4. That the decree is erroneous, inasmuch as it subjects *Jonas Mead* to costs. No relief is decreed against him.

5. That the evidence introduced by the plaintiff, on the hearing, was inadmissible. In the first place, the whole agreement was merged in the writing. *Goss* v. Lord

*Nugent,* 5 *Barn. & Ad.* 58.    Secondly, the writing does not sustain the bill : it does not shew, that the agreement was to mortgage the *same* land that was to be conveyed.    Thirdly, the writing was insufficient within the statute of frauds : it was not signed by any one owning the fee.

6. That the decree is erroneous, as it leaves it optional with the plaintiff, whether the defendant shall give a deed, or not.

*Bissell,* contra, contended, 1. That the plaintiff was entitled to the relief sought, on the footing of the original bill. In the first place, had the entire title been in *Annan,* a court of chancery would have decreed a specific performance against *him.*    Secondly, the *Meads* having purchased with *notice* of the plaintiff's equity, they must stand in *Annan's* place, and be subject to the same equity.    It is, however, claimed, that as the fee was in *Annan's* wife, and as a court of chancery would not have compelled her to convey, so neither will it compel her *grantees* to make such conveyance. It is true, that neither in this state, nor in the state of *New-York,* would a court of chancery have compelled her to part with her title.    *Butler* v. *Buckingham,* 5 *Day* 492.    *Martin* v. *Dwelly,* 6 *Wend.* 9.    But it does not follow, that such a conveyance may not be enforced against these grantees. For, in the first place, *Annan* had a life estate, and the plaintiff was entitled to *that,* provided he elected to take it. *Sugd. Vend.* 217. (ed. 1820.) 194. (ed. 1815.)    *Waters* v. *Travis,* 9 *Johns. Rep.* 450.    Secondly, the plaintiff was entitled to the influence of *Annan* over his wife, to induce her to give the plaintiff her title.    Thirdly, the *Meads* took not only the wife's interest, but *Annan's* life estate.    Fourthly, their interference was a *fraud ;* and their whole title is, therefore, void.    Fifthly, had *Annan* obtained his wife's title, he would have been bound to convey the whole, under the agreement. Sixthly, the *Meads* having purchased, with notice of the agreement, are bound, in equity, to do what *Annan* would then have been compelled to do.

2. That full effect is to be given to the decree of the vice-chancellor, in the state of *New-York,* set forth in the supplemental bill.    In the first place, that court had jurisdiction, both of the parties and the subject matter.    Secondly, having ju-

Annan
*v.*
Merritt.

risdiction, the decree of the court is conclusive, both as to the law and the facts.

3. That the receipt was properly admitted in evidence. In the first place, it sustained the averments in the bill. Here it can only be necessary to compare the terms of the receipt with these averments. Secondly, it is a sufficient *memorandum* within the statute of frauds. *Welford* v. *Beazely,* 3 *Atk.* 503.

4. That the parol evidence was properly admitted. In the first place, it did not go to contradict, vary, or controul, the written agreement; but it proves precisely the same agreement. So far, the evidence may have been *unnecessary;* but it was not, therefore, *inadmissible.* Secondly, it did go to prove a part performance. Thirdly, a part performance, by the plaintiff, of this agreement, entitles him to the relief sought. Fourthly, the acts proved, amount to a part performance of the agreement. *Lacon* v. *Mertins,* 3 *Atk.* 4. *Pyke* v. *Williams,* 2 *Vern.* 455. *Earl of Aylesford's* case, 2 *Stra.* 783. *Downey* v. *Hotchkiss,* 2 *Day* 225.

WILLIAMS, Ch. J.   Under the motion for a new trial, a question arises, as to the admissibility of evidence; and upon the motion in error, the principal question was, whether the plaintiff was entitled to any relief. The last question will be first considered.

The wife of *Samuel Annan,* being the owner of a tract of land, he offers to sell it to the plaintiff, at the price of 300 dollars; 50 dollars of which was to be paid down, the remainder secured by bond and mortgage, when the deed was given, which, the bill charged, was to be done soon, by warranty deed, signed by *Annan* and his wife. The plaintiff paid the 50 dollars, and *Annan* gave a receipt for the same, and delivered possession of the land to the plaintiff, who entered and made improvements thereon, such as cutting bushes, splitting rocks, and collecting timber, and preparing to build house thereon. The defendants, *J. & C. Mead,* knowing all these facts, combined with *Annan* to defraud the plaintiff, and took a deed to themselves from *Annan* and wife, of the lands, and have brought an action of ejectment against the plaintiff. The deed was taken to *Charles Mead,* but in trust for *Jonas.*

It has not been contended, that if *Annan* had been the owner in fee of this land, a court of chancery might not have decreed a specific performance ; or that, if in that case, the *Meads* had purchased of him, they would have been in a better situation. But the claim is, that a court of equity would not compel *Annan*, or his wife, (she being the owner,) to make a title ; and that their grantee has all the equity of either of them ; and that, as the plaintiff has no ˉequitable claim against her, he can have none against her grantee.

Formerly, the practice in courts of chancery was, to compel a specific performance of a contract made by a husband to sell the land of his wife ; and an eminent judge declared, that there were an hundred precedents for it. *Hall* v. *Hardy*, 1 *P. Wms.* 189. And so far has this been carried, as to compel the husband, by imprisonment, to procure the title. *Emery* v. *Wase.* 5 *Ves. jr.* 848. This was founded upon a presumption, that he must have had her consent, before he made such a stipulation. Of course, the like rule prevailed, where she had signed the contract. *Downey* v. *Hotchkiss*, 2 *Day* 225. But modern opinions are entirely against these decisions, in both cases: and it must now be considered as settled law, that a contract made by the husband alone, or by husband and wife, for the lands of the wife, in which he may have an interest, will not be enforced in chancery. *Davis* v. *Jones*, 1 *New Rep.* 269. *Martin* v. *Mitchell*, 2 *Jac. & W.* 426. *Martin* v. *Dwelly*, 6 *Wend.* 1. *Butler* v. *Buckingham*, 5 *Day* 492. *Squire* v. *Harder*, 1 *Paige* 494.

The defendants contend, that if the plaintiff has no equity, which could be enforced against Mrs. *Annan*, they can have none against her grantee ; that as they have her rights, they are entitled to her protection ; and that the notice they had, was only notice shewing that the plaintiff had no equitable right. To test the force of this reasoning, we must inquire, why it is, that a court of chancery will not compel a conveyance by the husband, or the husband and wife, in such cases. It cannot be for *his* sake ; although, generally, they will not compel a man to do what it is impossible for him to do. *Green* v. *Smith*, 1 *Atk.* 573. 2 *Sw. Dig.* 27. But it is considered to be absurd to compel the wife to convey her land, by inflicting penalties upon her husband, when the law is so

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

careful of her rights, as not to suffer her to convey, without an examination, whether any undue measures have been used by the husband.    There can be but little difference, whether the wife is compelled to part with her property, by the compulsion of her husband, or by that sort of compulsion, which would operate upon her to deliver him from imprisonment. In the present case, it is not impossible for the defendants to convey the title ; nor is there any compulsion upon the wife. But the *Meads* say, they have all the equity of the wife, and so are entitled to her protection.    Had they no notice of the plaintiff's claims, this argument would have been decisive. If they, after notice, are to stand in Mrs. *Annan's* shoes, then it is not seen why any other person may not.    Suppose, then, the *Meads* had purchased this land for *Annan* himself, and conveyed it to him ; and the plaintiff was now claiming as against him ; could he set up any of these pleas—that he had but a life estate when he contracted, and that now he has only a right which the plaintiff could never have enforced in equity, if he had not taken it, and that he must stand upon the same ground that the person stood upon from whom he purchased it ?    Would a court of chancery listen a moment to such a defence ?    The answer would be, you contracted to convey this land and give a good title ; and although, at that time, it was impossible for you to do it, consistently with the rights of another, or perhaps it was entirely impracticable, yet as no such objection now exists, you cannot, in face of your own agreement, set up objections, which do not now exist.

If this be so, and *Annan* would be compelled to convey, upon what higher ground do these defendants stand ?    If they rely upon the wife's title, so did he.    If, when they received it, they knew that she had a title, which chancery would not take from her, so did he.    In short, we see no difference in the condition of the *Meads* and *Annan*, except that he was active, and they were passive, in depriving the plaintiff of the benefit of his contract.

In a court of equity, he who combines with another, in an act which operates as a fraud upon a third person, knowing the facts, can stand upon no better ground than the principal. Without the aid of some third person, *Annan* could not have effected this object.    If *Annan's* conduct, therefore, is such

as a court of equity terms fraudulent, those who combined with him, cannot escape untainted. They have become a party to aid him in the violation of his contract, under the mask of his wife's rights.

If it be said, that the plaintiff is in no worse condition than if a deed had not been given ; we say, that cannot be known. If *Annan,* or his wife, has been tempted to the course taken, by an offer of a higher price than that which the plaintiff gave, by those who knew of the previous bargain, it would seem as if they were more than passive. If this was not the fact, we see no reason to suppose, but that *Annan* and wife would as probably convey to the plaintiff as to the defendants. The *Meads,* at all events, by taking this deed, have deprived *Annan* of the power, and the plaintiff of the hope, arising from the *locus penitentiæ.* They have, also, deprived the plaintiff of the benefit of the life estate, which he might have been compelled to convey to the plaintiff, as it would seem, had he elected to claim it. *Waters* v. *Travis, 9 Johns. Rep.* 450. In short, the *Meads* seem to have identified themselves with *Annan ;* and, of course, we think they must stand rather in his situation, than in that of Mrs. *Annan,* who may safely claim the benefit of the shield the law has interposed for her protection. The policy of the law protects her real estate from the demands of her husband ; of course, no fraud is imputable to her. But no rule of policy requires, that others should be allowed to aid her husband in deceiving those who relied upon his influence over his wife. If the effect of this construction should be, that unless a wife shall choose to comply with her husband's contracts relative to his land, the estate must remain undisposed of, until his death ; this would probably be more for her benefit, as it would remain for her sole disposition after his death, if she survived him, or for her heirs, if she did not.

It was not, then, because the plaintiff had not an equitable claim on this property, that the court would not have interfered, had it not been conveyed ; but because the wife might interpose a superior claim. When that is removed, we see no principle, which ought to prevent a court of chancery from compelling the performance of that which ought to have been done, by one of the parties, under whom the *Meads* claim ; if

*Fairfield,*
*June, 1840.*

Annan
*v.*
Merritt.

he could have done it, without unduly affecting the rights of others.

Such being the view we have taken of the case, upon its merits, it becomes unnecessary to inquire whether the plaintiff would derive any aid from the decision in the state of *New-York*, which he has set up in his supplemental bill.

It was objected, to this decree, that the facts found by the court, did not support the facts stated in the bill. The bill states, that *Annan* was to execute, with his wife, a deed of warranty to the plaintiff. The court find, that fact is no otherwise proved, than by the receipt. The receipt shews, that *Merritt* was to have a warranty deed, with full covenants. It does not state *by whom* that deed was to be executed. But when we remember, that the land was owned by the wife; that *Annan* had contracted that the plaintiff should have a deed, without saying from whom; is not the inference a fair one, that he should have a deed from those who owned the estate ? If the terms of the instrument are ambiguous, the rule is, that it is to be construed most strongly against him who made it. The contract, then, was, that the plaintiff should have a deed from *Annan* and wife, of the land in question.

Again, it was said, that the decree was erroneous, because it left it optional with the plaintiff to pay the remainder of the purchase money or not, as he should choose. We do not see how the decree could have been otherwise. Should the court have directed the plaintiff, at all events, to pay the money ? Such an order would have been nugatory, unless the court intended to enforce it. And would the court, on an application of this kind, compel the plaintiff, upon a penalty, or upon pain of imprisonment, to do an act of this kind, contrary to the wishes of both parties ? Or, can the defendants complain, that the court do not compel the plaintiff to do an act, the doing of which only will entitle him to the redress he seeks, and the omission of which will place the defendants in the very position which they claim to be placed in, by their defence ? We think, that the bill of the plaintiff discloses sufficient inducement to him to pay; and the defence discloses facts, which shew, that if he does not, the defendants will not suffer by it.

Another objection was made to the taxing of costs against

*Jonas Mead.* The bill alleges, that both the *Meads* combined in this transaction; that the deed was given to *Charles,* but that *Jonas* paid the money; and that *Charles* holds it in trust for him; and that he is the equitable owner; and these facts were found. Upon these facts, the plaintiff was bound to make them both parties, one as the legal owner, and one as having the real interest. And although he has taken a decree against one only, it is not upon the ground that the facts disclosed are not such as made it proper to call the other into court, but that, as the legal title only was in one, a decree against the other would have been of no use. But if both united in the act, and that act was done for the benefit of one, but in the name of the other, we can see no good reason why one should be taxed with costs, and the other should escape.

Upon the trial, the evidence offered by the plaintiff was objected to; and aside from a specific objection to the receipt, the whole evidence seems to have been objected to. The general nature of the objection would, perhaps, be a sufficient ground for overruling it; as we do not know what the real objection to it was. Most of the evidence seems to have been acts tending to shew a part performance of the contract, by the plaintiff; such as money paid, possession taken, improvements made, and money expended. To exclude evidence of this character, would be to say, that part performance will not take a case out of the statute of frauds; and whatever we might have been disposed to say, were this a new question, it is now much too late to countenance a discussion of it. The authorities are too numerous, and too overpowering, for us to treat this as an open question. If it meant, that the evidence was not sufficient to take the case out of the statute, it is enough to say to this objection, that the weight of evidence is not presented for our consideration.

It was said, however, that the parol evidence must be rejected, because the parol contract was all merged in the written one. So far as it regards acts of performance, we see no objection to them, whether the contract was written or not. But we do not understand, that there was a written contract. What the defendants termed the written contract, is a receipt, introduced by the plaintiff, to prove part perform-

<div style="float:left">

*Fairfield,*
June, 1840.

Annan
*v.*
Merritt.

</div>

ance in the payment of money. In that receipt, the drafts-man refers to a prior contract, and counts upon that contract. He may have gone into the details of that contract more minutely than was necessary ; but this does not, therefore, become the contract, or the only evidence of it. It purports to be an acknowledgement of 50 dollars, received, in part, upon a contract for a farm, previously made. It was but a part of the evidence upon which the plaintiff relied, in proof of part performance. That it was proper, for that purpose, cannot be doubted.

Another objection to the receipt, was, that it did not prove the allegation in the bill, that the mortgage was to be given upon the land to be conveyed. We think, however, that this fact does sufficiently appear. *Annan* sells land lying in *Greenwich,* in this state. He requires part of the money *in* advance, and a mortgage to secure the remainder. But what is he to mortgage ? Any property he pleases ? Or who is to say how much, and where it shall be ? One would think, provision must have been made for this event, if such an one is intended. But, on the contrary, the deed from *Annan,* and the mortgage to him, are to be left at one place, at one time. No discretion was given to the person with whom they were to be deposited, as to what he was to receive. He was to receive both, and deliver both, at the same time, to the town-clerk ; and we are not told, that the plaintiff held any other land in that town. We think, therefore, not only from the ordinary course of business, but from the particular circumstances here alluded to, that the understanding of the parties was, that the mortgage was to be a mortgage of the same property which he purchased.

We think, therefore, there is no error in the judgment ; and that there should be no new trial.

In this opinion, the other Judges concurred, except Sherman, J., who gave no opinion, having been of counsel in the cause.

<div style="text-align:right">

Judgment affirmed.
New trial not to be granted.