ABBOTT & *a. v.* BALDWIN & *a.*

An agreement for the conveyance of land made by one who has previous
ly bound himself by contract, of which the purchaser has notice, to
convey the same land to another, will not be specifically enforced.

A verbal contract for the sale of land is not assignable.

A purchaser of land by verbal contract, who sells the land to a third per-
son, and subsequently repurchases it, cannot in a suit for specific per-
formance avail himself of the improvements made by such third
person, as a partial performance of the contract.

BILL IN EQUITY, for the specific performance of the defendants'
contract to convey to the plaintiffs the spruce and fir timber on a
certain lot in Pittsburg. In December, 1866, Oscar Baldwin, the
owner of the lot, gave the defendant Chase a bond, stipulating to
give him a deed of the lot if he paid $50 by March 15, 1867, and
$350 thereafter in three equal annual payments with interest. In
March, 1867, Chase paid $50, took possession of the lot, and has
ever since occupied it. Oscar Baldwin died in 1868, leaving a
widow, Ruby, who is administratrix of his estate and one of the
defendants, and two sons, James W. and Justus W., who are also
defendants. In November, 1869, Chase, by a verbal agreement,
with the express oral consent of the other defendants, sold the
spruce and fir timber on the lot, to be taken off within fourteen
years, to the plaintiffs and one Van Dyke, for $250, to be paid to
the Baldwins the next spring in part payment of the amount due
from Chase for the land. Directly afterwards, the plaintiffs and
Van Dyke sold the timber to one Hilliard for $360, of which $250
was to be paid to the Baldwins, $60 to Van Dyke, and $50 to the
plaintiffs. In December, 1869, Hilliard built a logging-camp and
cattle-hovel, cut logging-paths, and made a roll-way on the lot at
an expense of $200 ; and during that winter cut and sold enough
of the timber to pay the purchase-money, $360, and all expenses
except the $200 for the camp roads, etc. It turned out that there
was a much larger quantity of timber on the lot than any of the
parties expected. Shortly after Hilliard commenced logging, the
Baldwins required security for the $250 to be paid to them, where-
upon the plaintiffs, December 20, 1869, gave the following writing :
"I, Josiah Abbott, for the company of J. Abbott & Co., having
bargained with Ruby Baldwin, administratrix of the estate of
Oscar Baldwin, for the lumber on the farm or lot now occupied by
Addison Chase in Pittsburg, which is now being logged off by
James M. Hilliard for me, do hereby agree to pay to said Ruby
Baldwin or order two hundred and fifty dollars, before said lumber
is run from said farm." April 11, 1870, the $250 was paid by
one Weeks (to whom Hilliard sold the timber cut by him) to
Ruby Baldwin, who, under that date, receipted for the same upon

the foregoing writing, which was thereafter held by Hilliard as evidence that he had performed that part of his agreement. Until this time Chase had no knowledge of the writing, and it did not appear that either he or the Baldwins had any knowledge of the sale by the plaintiffs and Van Dyke to Hilliard. Afterwards Hilliard sold the timber remaining upon the lot to the plaintiffs. The camp and paths made by Hilliard would be of some use in getting off the remaining timber.

*E. Aldrich* and *Ladd & Fletcher*, for the defendants.

*Ray, Drew & Jordan*, for the plaintiffs. The writing is a sufficient memorandum of the contract to answer the requirements of the statute of frauds It contains all the essential elements of the contract,—the names of the parties, the thing sold, and the price. It is signed by the party to be charged, within the meaning of the statute; the name of Ruby Baldwin in the body of the writing is a sufficient signing. It is immaterial where the name of the party to be charged appears; whether at the top, in the middle, or at the bottom of the memorandum. *Merritt* v. *Clason*, 7 Am. Dec. 286; *Clason* v. *Bailey*, 14 Johns. 484; *Hawkins* v. *Chase*, 19 Pick. 505, 506; *Williams* v. *Bacon*, 2 Gray 387; *Penniman* v. *Hartshorn*, 13 Mass. 87; *Sanborn* v. *Flagler*, 9 Allen 474; *Johnson* v. *Dodgson*, 2 M. & W. 653. The signing of the receipt upon the same paper with the memorandum for the full amount of the purchase-money is a ratification, approval, and adoption of the memorandum as such. The receipt is a part of the memorandum by actual annexation; it is, in fact, the completion of the writing. Chase is bound by this writing; he authorized the trade with the plaintiffs; it was made for his benefit; the money went directly to his credit; he was present when the money was paid by Hilliard to Mrs. Baldwin, and made no objection when she signed the receipt therefor. He thereby ratified the whole transaction, and is estopped to contest it.

The plaintiffs are entitled to the relief prayed for on the ground of part performance. It is a well settled rule that where a contract for an interest in lands has been executed, or partly executed, by one party, it may be proved by parol evidence, and specific performance decreed. Pow. Mort. 65; *Kidder* v. *Barr*, 35 N. H. 235; *Parkhurst* v. *Van Cortland*, 14 Johns. 15. The plaintiffs went into possession under the contract, made valuable improvements, paid the whole purchase-money, and cannot be adequately compensated by damages. They are liable as trespassers unless specific performance is decreed. 1 Story Eq. Jur., s. 761; *Howe* v. *Batchelder*, 49 N. H. 204; *Kingsley* v. *Holbrook*, 45 N. H. 313. Going into possession under the contract and making improvements constitute a part performance sufficient to take the case out of the statute. That is a part performance which puts the party into a situation

which is a fraud upon him unless the agreement is performed. 1 Story Eq. Jur., *s.* 762; *Tilton* v. *Tilton,* 9 N. H. 385; *Burnham* v. *Porter,* 24 N. H. 580; *Ham* v. *Goodrich,* 33 N. H. 32; *Freeman* v. *Freeman,* 43 N. Y. 34.

*G. A. Bingham,* on the same side, cited in addition *Newton* v. *Swazey,* 8 N. H. 8, and *Way* v. *Cutting,* 17 N. H. 450.

CARPENTER, J.   The timber, bargained to the plaintiffs and Van Dyke, to be taken off within fourteen years, was a part of the land.   *Kingsley* v. *Holbrook,* 45 N. H. 313; *Howe* v. *Batchelder,* 49 N. H. 204.   The statute of frauds (G. L., *c.* 220, *s.* 14) provides that "no action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought or some memorandum thereof is in writing, and signed by the party to be charged, or by some person by him thereto authorized by writing."   Ruby Baldwin was not authorized by her sons or by Chase in writing to make or sign the memorandum : it is therefore insufficient to charge them.   Decisions made in jurisdictions where the authority is not required to be in writing are not in point. Whether the memorandum is sufficient under the statute to charge Ruby Baldwin herself is a question which need not be considered, because (1) in her character as administratrix she has no title to the real estate of her deceased husband, and so far as appears she has otherwise no title (*Chartier* v. *Marshall,* 51 N. H. 400); and (2) if the legal title is vested in her, she holds it in trust for Chase, charged with the obligation to convey it to him upon the payment of whatever sum remains due upon the bond.   If she should convey it to the plaintiffs, they, having as the case shows full notice, would take it, subject to the same trust; they would acquire by such conveyance merely the right to receive the amount due upon the bond, upon the payment or tender of which equity would compel them to convey the land to Chase. 'It is said that in no case will the court enforce the specific performance of a contract which amounts to a breach of trust, even though the purchaser be without fault.   2 Perry Trusts, *s.* 787.   However that may be, equity will not compel the specific performance of a contract to convey the legal title to real estate, which equitably belongs to one person, to a third person who has notice of such equity, but will leave the party to his action at law for damages.   *Spence* v. *Hogg,* 1 Coll. 226; *Connihan* v. *Thompson,* 111 Mass. 270; *Annan* v. *Merritt,* 13 Conn. 478; *Green* v. *Finin,* 35 Conn. 178.

It remains to consider whether the plaintiffs are entitled to a decree upon the ground of a partial performance of the verbal contract with Chase.   In order to entitle a party to a decree for the specific performance of a verbal contract for the conveyance of land upon this ground, he must not only establish the contract under which he claims, but also such a partial performance of the contract, relying upon its fulfilment that the non-perform-

ance thereof by the other party will be a fraud upon him. *Tilton* v. *Tilton*, 9 N. H. 390; *Kidder* v. *Barr*, 35 N. H. 255; *Malins* v. *Brown*, 4 N. Y. 403. The acts of performance must be such as the party would not have done except by reason of the agreement, and must be done with a direct view to its performance; and the agreement set up must appear to be the same with the one partly performed. *Phillips* v. *Thompson*, 1 Johns. Ch. 149. The plaintiffs fail in both particulars. They show neither contract nor performance which can avail them. They cannot stand upon the original contract, because it was made, not with them alone, but with them and Van Dyke who must be joined as plaintiff in order to enforce it; nor as assignees of the contract, because it was not assignable. By it the plaintiffs and Van Dyke acquired nothing except a license to enter upon the land and take the timber, the sole effect of which was to protect them from an action of trespass until it was revoked. It would protect no one else. It conferred upon them a personal privilege not assignable. *Howe* v. *Batchelder*, 49 N. H. 204. No right under or interest in the contract passed by the sale to Hilliard, or by that of Hilliard to the plaintiffs.

In whatever Hilliard did he acted for himself, and not for the plaintiffs and Van Dyke. They cannot avail themselves of his acts as a partial performance of the agreement, because they were done neither in their behalf, nor in pursuance of the contract. He was a mere trespasser. *Howe* v. *Batchelder*, *supra*. If, after all his improvements were completed, Hilliard had brought a bill for specific performance, he must have failed, because with him there was no contract; had the plaintiffs and Van Dyke joined in bringing a like bill, they must have failed, because they did nothing in the way of performance.

If the defendants had known of and assented to the sale to Hilliard, and that of Hilliard to the plaintiffs, it might perhaps have been evidence tending to show a substitution of Hilliard in the place of the plaintiffs and Van Dyke, and of the plaintiffs in the place of Hilliard,—or, in other words, an abandonment of the old contract, and the making of a new one first with Hilliard, and finally with the plaintiffs; but nothing of that kind appears in the case.

*Bill dismissed.*

DOE, C. J., did not sit: the others concurred.