JOHN B. HANLON, APPELLANT, V. WALLACE W.
WILSON, APPELLEE.

**Specific Performance.** Part performance on the part of the
vendor, including the delivery of possession, and full perform-
ance on the part of the vendee, is sufficient to take a parol
contract for the conveyance of real estate out of the statute of
frauds, and to authorize a decree for the specific performance
of such contract.

APPEAL from Johnson county. Tried below before
WEAVER, J.

*S. P. Davidson,* for appellant, cited Gen. Stat., 392,
sec. 6. Brown on Frauds, secs. 437, 448. Fry on
Spec. Perf., sec. 378. *Blanchard v. McDougall,* 6
Wis., 166, 168. *Fisher v. Moolick,* 13 Wis., 321, 324.
*Burtch v. Hogge, Har. Ch.* (Mich.), 31. *Bomier v. Cald-
well,* 8 Mich., 463, 475. *Morgan v. Bergen,* 3 Neb.,
213.

*E. W. and V. D. Metcalfe,* for appellee, cited *Poland
v. O'Connor,* 1 Neb., 50. *Charpot v. Sigerson,* 25 Mo.,
63. *Weed v. Terry,* 2 Douglass (Mich.), 344. *Wilson
v. Wilson,* 6 Mich., 9. Story's Equity, sec. 764. *Tier-
man v. Gibney,* 24 Wis., 190. *Knoll v. Harvey,* 19
Wis., 99. *D' Wolf v. Pratt,* 42 Ill., 198. *Hartwell v.
Black,* 48 Ill., 301. *Deniston v. Hoagland,* 67 Ill., 265.
*Cooper v. Carlisle,* 17 N. J. Eq., 525. *Smith v. Crandall,*
20 Md., 482. *Wallace v. Brown,* 10 N. J. Eq., 308.

COBB, J.

This is a bill for the specific performance of a parol
contract for the sale of real estate. The petition al-
leges that on or about the twentieth day of April,

1877, plaintiff purchased of defendant a certain tract of land [describing it] for an agreed and valuable consideration paid down at the time of said purchase; that defendant then and there surrendered the possession of said land to the plaintiff, who has ever since remained in possession thereof; that the defendant then and there agreed to make, execute, and deliver to the plaintiff a good and sufficient warranty deed of the said land whenever required so to do by the plaintiff; that on or about the twentieth day of May, 1877, etc., plaintiff demanded such deed of defendant, who refused, etc.

The defendant's answer denies each allegation of the petition specifically, and for a second defense alleges that he had some conversation with plaintiff about trading said land to him for a horse; that said horse is a stallion, and that plaintiff, with intent to defraud defendant, falsely represented the same to be a thoroughbred St. Lawrence and Hambletonian (?) of the get of Old Kelley St. Lawrence, of Montreal, Canada, and dam by Printer, and that plaintiff would furnish a pedigree showing the horse to be of said stock, and also a certificate of registry for him in the Farmer's Turf Association of the state of Iowa, and at no time did the defendant talk or think of making said trade unless the said facts about the horse were furnished and established by the plaintiff; and also avers that said horse is not a thoroughbred St. Lawrence and Hambletonian, but is of a much less valuable and inferior stock, and wholly worthless as a stallion of improved and valuable blood, etc.

The judge of the district court who tried the cause made the following finding:

" * * * The court finds generally for the defendant, and further finds that plaintiff falsely represented the horse, described in the answer to be a thor-

oughbred St. Lawrence and Hambletonian. Also find that the plaintiff, John B. Hanlon, was to furnish a pedigree showing the horse to be of the stock stated in the answer; and I further find the plaintiff never furnished said pedigree, and by reason of said plaintiff's failure to comply with his part of the contract the trade for the land described in plaintiff's petition was never made." And decree accordingly.

There can be no doubt that the cause of action set out in the plaintiff's petition is a proper one for equitable relief. It is taken out of the operation of the statute of frauds by reason of full performance on the part of the plaintiff and part performance on the part of the defendant.

The counsel for defendant asks the court: "Is not the doctrine of part performance an open question in this state?" And assuming that it is so, suggests that in establishing a rule for our young commonwealth it would be well to adhere strictly to the reason and objects of the statute of frauds.

In reply to the question I would say that the question has been before this court pretty squarely in two cases. *Poland v. O'Connor*, 1 Neb., 50; and *Morgan v. Bergen*, 3 Neb., 209. In the first-named case the court, in holding that no contract had been established by proof, express an intimation that, had the contract itself been proven, the question would then arise whether there had been such a part performance as would entitle the plaintiff to relief—the subject matter being an oral sale of real property—thereby very clearly implying that sufficient part performance would take the case out of the inhibition of the statute. In the latter named case the court, in its opinion by the present chief justice, say: "In suits for the specific performance of contracts the contract sought to be enforced and the acts of part performance must

unequivocally appear to relate to the identical con-
tract set up," thereby clearly inferring that if both
did unequivocally appear to relate to the contract set
up, that such part performance would be sufficient to
take the case out of the statute; and in this connec-
tion I quote from the opinion in *Annan v. Merritt*, 13
Conn., 478: " To exclude evidence of this character
would be to say that part performance will not take a
case out of the statute of frauds; and whatever we
might have been disposed to say, were this a new
question, it is now much too late to countenance a dis-
cussion of it."

Also the following from the opinion in *Ellis v. Ellis*,
1 Devereux's Equity, a case cited by defendant's coun-
sel: " Our act makes all contracts to sell or convey
lands void and of no effect unless they be put in wri-
ting. The statute of Charles II. prohibits the bringing
of any action upon any contract or sale of lands, or
any interest in or concerning them, unless the agree-
ment on which such an action shall be brought, or
some memorandum or note thereof, shall be in wri-
ting, &c. As this would extend to prevent the institu-
tion of a suit in equity as well as at law, it is equally
operative with our act, since depriving the party of
all remedy on a contract is equivalent to annulling it.
In this view I think the exposition of the statute of
frauds is applicable to ours, and that after a system
has been built up by the judgment of a succession of
able men, it would be unwise and unsafe to depart
therefrom."

While it is true that several eminent English judges,
and probably American also, have expressed regrets
that the letter of the statute of Charles II. had ever
been departed from in the respect now under consid-
eration, yet all of them have recognized the fact that
such departure had been made very early in the ad-

ministration of the law under that statute, and so far as I have been able to find, but few of the American and none of the English courts have seen proper to adhere to the strict letter of the statute.

For my own part, as an individual member of the court, I think that while the statute of frauds is of priceless value as a general rule of law, yet that as long as human nature remains as it is there will constantly arise cases in which it will be impossible for the courts to administer justice between the parties, if held to the iron rule of the statute, and in which the statute itself will have been by the crafty and unscrupulous converted into an instrument of fraud upon the careless and improvident. And indeed it has often seemed to me that the acts of parties, either in the whole or part performance of an alleged contract, nearly or quite contemporaneously with the making of the same, while they generally act in reference to the contract, and not in reference to disputes or lawsuits which may thereafter arise, generally furnish a more reliable key to the true intent and meaning of a contract than even the writing itself, when drafted by an unskillful or dishonest hand.

In the case at bar the court is quite agreed that the learned judge who tried it in the district court took an erroneous view, and that his findings and decree are unsupported by the evidence. The evidence on the part of the plaintiff by his own testimony is to the effect that on the twentieth of April, 1877, he traded a valuable stud horse, which he then owned, for the forty-acre tract of land in question, reserving one half of the earnings of the horse for the then current season; that he thereupon delivered to the defendant the possession of the horse jointly with himself, and the defendant delivered the possession of the land to the plaintiff, who took possession thereof, set out a quan-

tity of fruit trees thereon, and remained in possession when suit was commenced. The evidence on the part of the defendant, by his own testimony, admits the trade substantially, but asserts that the trade was not to be carried into effect by his conveying the land untill the plaintiff should furnish him with a pedigree of the horse and certificate of his registry in the Farmers' Turf Association of Iowa. These conditions are denied by the plaintiff both in his reply and in his testimony.

There is considerable testimony in the case by other witnesses offered and sworn on either side, chiefly as to the possession of the land by the plaintiff and of the horse by the defendant, after the date of the alleged trade, and of statements and admissions by each party respectively, as to the terms of the trade, &c. There were some other matters brought into the controversy, such as the subsequent purchase by the defendant of the plaintiff's reserved interest in the season of the horse, but which, while they serve somewhat to complicate the case, need not be further noticed.

There is no evidence tending to show that the horse was not of the blood and pedigree which it is claimed the plaintiff represented him to be, nor that he was not a valuable stud horse, nor that the stock of horses to which it is alleged plaintiff represented said horse to belong, possessed any special or recognized value above other horses; nor that defendant ever returned or offered to return said horse to the plaintiff, except as coupled with a condition which in our view of the case was inadmissible. There is no evidence as to the value of the horse or of the land, nor of their relative value.

The findings and decree of the district court are therefore reversed, and a decree will be entered in this court requiring the defendant to convey the forty-acre

tract of land described in the pleadings to the defend-. ant by warranty deed, except as to dower, &c., within twenty days from the filing of this decree; and that if said defendant fail for said length of time to execute and deliver such conveyance, that a copy of such decree may be filed and recorded, and thereupon have the same effect as such conveyance.

DECREE ACCORDINGLY.