J. Thompson Baker et al., plaintiffs in error, v. Alured N. Wiswell, defendant in error.

1. **Statute of Frauds:** PART PERFORMANCE. Part payment of the purchase price of real estate is not such part performance as to take an oral contract of sale out of the statute of frauds.

2. **Real Estate:** SALE. An oral agreement for the sale of real estate must possess the elements of certainty, and be established by clear and satisfactory proof.

ERROR to the district court for Gage county. Tried below before DAVIDSON, J.

*Stowell & Kelligar*, for plaintiffs in error.

*L. W. Colby* and *Hazlett & Bates*, for defendant in error.

MAXWELL, J.

This is an action to recover the sum of $2,000 and interest for nine reaping machines sold by James S. and E. C. Marsh to the defendant. The plaintiff claims as assignee of the Marshes. The defendant in his answer admits the purchase of the machines, but alleges as a defense, first, that he sold to said Marshes 560 acres of land in Kansas and his interest in three sections of school land in Gage county, which he had leased from the state, and also a considerable amount of personal property, all being of the value of $7,000; that the contract was to be reduced to writing, and the Marshes were at that time to pay a certain amount of money and deliver a certain number of reapers known as "No. 4" and "Valley Chief," and also deliver a number in the year 1878, and that the reapers in question were delivered in pursuance of such agreement. Afterwards the defendant and the Marshes were unable to agree upon the terms of the contract, consequently it was not reduced to writing, but the defendant claims to have

fully performed his part of said agreement, and therefore prays judgment for damages for breach of contract in the sum of $13,604, etc. There is also a count in the answer pleading a submission of the matter in controversy to arbitrators and an award, but as the award was set aside by the district court we need not consider that question. The defense rests entirely upon the validity of the alleged contract. If that is invalid the whole defense fails.

The testimony covers nearly three hundred pages, but in our view it does not establish a completed contract. The defendant himself shows this to be the case. Upon the question of the contract he testifies as follows:

Q. What was the price of the school sections?

A. The Giddings school section was three thousand dollars.

Objected to as incompetent, irrelevant, and immaterial. Objection overruled. Plaintiffs except.

Q. And what was the other school section?

A. The Crocker section, two thousand dollars, six hundred dollars in money the balance in machines; the Dixon was two thousand dollars, five hundred in money the balance in machines.

Q. In what machines? What machines were to be paid?

A. They were to be No. 4, what is called Marsh No. 4, with the exception of what Valley Chiefs were here in Beatrice.

Q. At what price?

A. The No. 4 machines I agreed to take at $150 here with the freight added, and the Valley Chiefs at $125 with freight added.

Q. Was there any personal property at that time traded?

A. Yes, six head of horses, three sets of harness, and header, corn plows, and breaking plows, tools used for three teams to farm on the Giddings section.

Q. What was the price of them?

A. They were a thousand dollars in money.

Q. This land in Kansas, what kind of a title was that?

A. That was a warranty deed; straight title from me to Marsh.

Q. These school lands, how about them?

A. I just signed my interest in them, the lease; I had a lease and so signed them over, made out the papers and so signed them.

Plaintiffs object to the statement relative to his having leases as incompetent and not the best evidence. Objection overruled. Plaintiffs except.

Q. How much of this was to be paid and when was it to be paid?

A. He was to pay me five hundred dollars cash, and was to pay Crocker six hundred dollars cash, I think in six months or the first of January; I forget just the time; and pay a thousand dollars in six months for this personal property on the place, and the balance in No. 4 machines, except the Valley Chiefs here in town.

Q. State what was the agreement in regard to machines here in Beatrice. Were you to take them?

A. Yes, I was to have all machines in Beatrice.

Q. How many were there?

A. Twenty No. 4 and eight Valley Chiefs.

Q. These nine for which this suit was brought, were they part of those in Beatrice?

A. Yes.

Q. State what was done with Marsh about turning over the machines in Beatrice.

A. When we made the trade he was to draw up the writing to pay so much money; he said he wanted a writing made to show he had paid the money; in a few days, I think the next Saturday, and then I was to take the machines and sell them; he said he would give them to me; that day came and he did not have the money, and he said

he wanted me to give him a week or ten days to pay the money; he was going to get it of his brother and it did not come. I told him if I was going to have the machines I wanted to know; he said he would go and turn over all of the machines on the contract and make me safe, and then when the money came would fix the contract, and he did so.

Q. When was this that the machines were turned over, do you remember the exact time?

A. No, I don't remember the exact time. Either the last of July or first of August, just before we went to harvesting, but three parties were talking of buying and I wanted them to sell.

Q. These nine machines mentioned in the petition, are they the same machines turned over to you by Marsh at that time?

A. Yes, on this trade.

Q. What attempts have been made by Marsh or his agent, E. C. Marsh, since that time to comply with the agreement on his part to have the machines and money turned over?

A. I told him I had the property just as I agreed to, and was willing at any time, and wanted him to come up to the agreement; he said Marsh could not pay the money.

Q. State what arrangements had he made or tried to make in regard to getting this money.

Objected to as immaterial. Objection overruled. Plaintiffs except.

A. He said he would see if he could get the money for me. I had some paper at the bank, and had calculated on this to pay it. He said he would go into the bank and see if he could not make satisfactory arrangements.

Q. Did you go there together?

A. Yes, all together.

Q. What statements were made by Marsh at that time?

A. He told Smith he was to pay me some money and

it hadn't yet come, and I was anxious for the money, and he wanted to make arrangements with him to get it; said he had traded me for all the land, all, I think, in this county.

Q. State whether on or about the fifth of October, 1877, or other times, you made demands on plaintiff to comply with this agreement on his part, and if so state what he said and what you said?

A. I told him I wanted him to fix it up, and that I wanted the balance of the machines and the money, and had the papers all ready and was waiting, and wanted to know what he was going to do. I was willing to trade just as we said and wanted him to comply with his part of the contract, and he refused.

Q. State if you were ready and willing to comply with the terms of the agreement on your part?

A. Yes, and the reason he did not was, he did not have the money; he told me so; he supposed his brother was going to get it for him.

Q. You can state if you had a conversation with E. C. Marsh, in McConnell's office, in regard to turning over these machines, and if so, state what was said and done there in McConnell's presence, as near as you can state it.

A. I went there to see him about the machines—that is, he agreed to pay me the money before this, and I went in that day to see if he had got his money yet; he said he hadn't got it, and wanted me to wait a few days longer. I told him I wanted the machines if I was going to have them; if I was going to sell machines I had to have them right away, and if he was going to finish the trade with me I wanted the money and machines. He said, "You will have to wait, I have not got the money and cannot get it, but," he said, "I will tell you what I will do; I will turn over all the machines in this town, and that will make you safe, and we will have more brought here before they are sold." And he did so, and went and turned over the ma-

chines at Harrison's; and he thought the money would be here before next week.

On cross-examination he states in regard to this contract as follows:

Q. There was no change of possession, they remained with Giddings after that?

A. Yes, they staid there with Giddings, and he agreed with Marsh to have them at any time I said so.

Q. That was before you went and got that writing done, was it not?

A. Yes, that time was.

Q. The times you went and got the writing drawn were in Beatrice?

A. Yes, sir.

Q. Fix the date as near as you can.

A. I think that the next Saturday we fixed the day and drew the writings; he wanted to pay me five hundred dollars in money, and he could not do it; he did not have the money and wanted me to wait another week until he got the money from his brother; and it run along about a week and I went and saw him again; he told me he had not any money yet, and wanted me to still wait; and I said I wanted to sell the machines; he said I could have the machines.

He also testifies that when the Marshes and himself attempted to reduce the contract to writing, in September, 1877, they were unable to agree upon the terms, one of the causes of disagreement being that he was to receive of the machines thereafter to be sent to Beatrice those known as No. 4, and not Valley Chiefs, the No. 4 being more valuable than the others. There were other causes of disagreement to which it is unnecessary to refer. It is very clear that the parties did not consider this a completed contract until the writings were drawn and the money paid, and the defendant was permitted to take the machines in question because there was a market for them at that time, but

he did not waive the payment of the money. The situation was this, according to his own testimony, that he was ready to comply with the oral agreement provided the Marshes paid the money, otherwise not. Suppose the Marshes had agreed orally to purchase a farm and certain stock thereon from a farmer, the agreement to be reduced to writing and certain cash payments made at the time the written agreement was entered into, and afterwards machines were delivered over for present use at the request of the vendor of the farm! In case of the failure of the vendee to perform on his part, could the vendor enforce such contract? We think not. A verbal contract for the sale of land where partly performed by the party seeking the enforcement of the contract, will, in a proper case, be enforced, but mere payment of a portion of the consideration is not sufficient to take the case out of the statute of frauds. The grounds of the remedy are, that it would be a virtual fraud on the plaintiff, for the defendant, after permitting acts of part performance which change the relation of the parties and prevent a restoration to their former condition, to interpose the statute as a defense and thus secure to himself the benefits of the plaintiff's part performance, while he would be left without adequate remedy at law and liable for damages as a trespasser. 3 Pom. Eq., § 1409 and cases cited in notes. But the acts of part performance that take the case out of the statute are actual possession and the construction of valuable improvements, or perhaps in some cases, as where the land was wild, cultivation. In *Poland v. O'Connor*, 1 Neb., 50, it was held that payment of a small portion of the purchase price is not such a part performance as will take the contract out of the statute of frauds. *Temple v. Johnson*, 71 Ill., 13. *Glass v. Hurlbert*, 102 Mass., 28. *Wood v. Jones*, 35 Tex., 64. Brown on Statute of Frauds (4th Ed.), § 462. *Holmes v. Evans*, 48 Miss., 248. *Minturn v. Baylis*, 33 Cal., 129. *McGuire v. Stevens*, 2 Am. R., 649. *Fry v. Platt*, 30 Alb. L. J., 454.

Whether when the entire consideration is paid and possession delivered so that the plaintiff has fully performed on his part, or the compensation is the personal services of the plaintiff the contract, would be enforced, is not now before the court. But we are not aware of any recent case holding that part payment alone is sufficient to take the case out of the statute. We therefore hold that so far as the real estate at least is concerned the oral agreement cannot be enforced, and is not a proper foundation on which to recover damages.

There is too much uncertainty also as to the nature of the alleged agreement. An oral agreement to be enforced must possess the elements of certainty. The court cannot supply by conjecture what should be established by clear and satisfactory proof. On some important points, as in regard to the kind of machines the Marshes were to furnish the defendant, there is an entire failure to establish clearly the kind to be furnished. The alleged agreement, therefore, is insufficient. Pomeroy's Equity, § 1499. *Lester v. Foxcroft,* Colles P. C., 108, cited 2 Vern., 456. 1 Eq. Lead. Cas., 1027, 1038, 1042 (4th Am. Ed.) *Clinan v. Cooke,* 1 Sch. & Lef., 22. *Newton v. Swazey,* 8 N. H., 9. *Tilton v. Tilton,* 9 Id., 385. *Eaton v. Whitaker,* 18 Conn., 222. *Hall v. Whittier,* 10 R. I., 530. *Freeman v. Freeman,* 43 N. Y., 34. *Welsh v. Bayaud,* 21 N. J. Eq., 186. *Greenlee v. Greenlee,* 22 Pa. St., 225. *Cole v. Cole,* 41 Md., 301. *Semmes v. Worthington,* 38 Md., 298. *Murphy's Adm'r v. Carter et al.,* 23 Gratt., 483. *Lowry v. Buffington,* 6 W. Va., 249. *Church of the Advent v. Farrow,* 7 Rich. Eq., 378. *Ford v. Finney,* 35 Ga., 258. *Johnson v. Bowden,* 37 Tex., 621. *Farrar v. Patton,* 20 Mo., 81. *Feusier v. Sneath,* 3 Nev., 120. *Morgan v. Bergen,* 3 Neb., 209. *Gregg v. Hamilton,* 12 Kas., 333. *Northrop v. Boone,* 66 Ill., 368. *Fall v. Hazelrigg,* 45 Ind., 576. *Grant v. Ramsey,* 7 Ohio St., 157. *Armes v. Bigelow,* 3 McArth., 442. *Hiatt v. Williams,* 72 Mo., 214. *Bohanan*

*v. Bohanan,* 96 Ill., 591. *Jefferson v. Jefferson,* 96 Id., 551. *Marshall v. Peck,* 91 Id., 187. *Wallace v. Rappleye,* 103 Id., 229. *Littlefield v. Littlefield,* 51 Wis., 23. *Seaman v. Aschermann,* Id., 678. *Manly v. Howlett,* 55 Cal., 94. *Hanlon v. Wilson,* 10 Neb., 138. *Lamb v. Hinman,* 46 Mich., 112. *Jamison v. Dimock,* 95 Pa. St., 52. *Newkumet v. Kraft,* 10 Phila., 127. *Wharton v. Stoutenburgh,* 35 N. J. Eq., 266. *Sherman v. Scott,* 27 Hun., 331. *Barnes v. Boston, etc., R. R.,* 130 Mass., 388.

As to the personal property proposed to be sold to the Marshes, if it can be separated from the real estate, it is possible that whatever damages the defendant may have sustained by the failure to take the same may be recouped from the price of the machines. We do not so decide, however, as the question is not before the court.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.