TECUMSEH NATIONAL BANK OF TECUMSEH V. MARY A. S. McGEE.

FILED APRIL 17, 1901.   No. 11,761.

1. **Exception to the Rule that Administrator or Personal Representative of Decedent Must Prosecute for Debts Due Estate: SUBSTITUTION OF HEIR AT LAW.** While the general rule is that an administrator or personal representative of a decedent's estate must prosecute actions for recovery of debts due the estate, there are exceptions to the rule; and in the present case *held* that the order of the trial court, substituting an heir at law and permitting her to prosecute the action for her interest in

the claim in controversy in her own name, the other heirs
having settled and compromised theirs, was not erroneous.

2. **Set'ing Aside Order of Dismissal Made on Stipulation:** HEIR AT
LAW SUBSTITUTED PLAINTIFF: ABSENCE OF BILL OF EXCEPTIONS:
PRESUMPTION. Where, during the proceedings in an action to
recover a debt alleged to be due an estate, the trial court, on
application of an heir at law, sets aside an order of dismissal
made at the same term, on a stipulation entered into by the
administrator and the defendant, and permits the heir at law
to be substituted plaintiff and prosecute the action in her own
name and right for her interest in the subject-matter of the
litigation, and the evidence upon such hearing has not been pre-
served in a bill of exceptions, the presumption is that there was
sufficient evidence to support the finding and order made by the
trial court on such hearing.

3. **Settlement by Administrator:** RIGHTS OF HEIR AT LAW: POWER OF
COURT: SUBSTITUTION. Where a settlement of a matter in liti-
gation is entered into by the administrator, which is prejudicial
to the substantial rights of an heir at law, and not such as
properly protects her interests, or was entered into collusively
and in fraud of her rights and without her consent, *held*, the
court may properly, under the circumstances, permit the heir
at law to be substituted to prosecute the action in her own
name.

4. **Substitution:** STATUTE OF LIMITATIONS. Such substitution would
not be equivalent to the beginning of a new action, and the stat-
ute of limitations can not be interposed by reason thereof.

5. **Matters of Law May Be Properly Withdrawn from Jury.** Action
of the trial court in disposing of the first, second and third de-
fenses, pleaded in the answer, as matters of law, to be decided
by the court, and withdrawing the same from the consideration
of the jury, *held* proper.

6. **Rulings of Trial Court Made During Pendency of Action Are Res
Adjudicata.** Where the questions raised by the defense pleaded
have been disposed of by the rulings of the trial court, made
during the pendency of the action, they have become *res ad-
judicata*, and are not proper questions to be tried by the jury as
issues of fact.

7. **Bank Officer and Stockholder:** TRANSFER OF INTEREST: DIRECT LE-
GAL INTEREST. Where a person was a stockholder and an officer
in a bank at the time of an alleged deposit out of which litiga-
tion grew, but before the litigation, and long prior to the death
of the plaintiff who began the litigation, transferred all his
interest in the bank and severed his connection therewith, he
would not, on a subsequent trial of the case, after the death of
the plaintiff, by reason of his prior connection with the bank,
be incompetent to testify as to transactions had with the de-

ceased plaintiff at the time of, and relating to, the alleged deposit, and would not have a direct legal interest in the result of the suit, within the meaning of section 329 of the Code.

8. **Witness: DIRECT LEGAL INTEREST.** If a judgment pronounced in a pending action will be legal evidence for or against the witness in another action, then such witness has a direct legal interest in the result of the suit, which renders his testimony incompetent under the provisions of said section.

9. **Wi n.ss: INCOMPETENT TESTIMONY.** Testimony of witness as to transactions inquired about *held* incompetent as against the representatives of the deceased by reason of his connection with the firm or bank of Russell & Holmes, of which he was a member.

10. **Testimony of Deceased on Former Trial: PARTICULAR TRANSACTION INVOLVED.** Where testimony of a deceased person taken on a former trial is read in evidence at a subsequent trial, but not relating to a particular transaction involved in controversy, the testimony of a witness regarding such particular transaction is not thereby rendered admissible.

11. **Instruction: ONUS PROBANDI: FAIR PREPONDERANCE OF EVIDENCE.** Where, under the pleadings, the burden was on the defendant, it is not error to charge the jury that "unless you find further that the defendant has proved by a fair preponderance of the evidence that defendant has paid to George W. Harmon or the bank of Russell & Holmes on the authority of George W. Harmon the sum of $5,000 and interest, if you find that interest was to be paid by defendant bank, you must find for the plaintiff."

12. **Instructions.** Instructions examined, and found to be pertinent to the issues as presented by the pleadings, and the giving of the same without error.

13. **Evidence.** Evidence examined, and found to support the verdict and the judgment rendered thereon.

ERROR from the district court for Johnson county. Tried below before STUBBS, J. *Affirmed.*

*S. P. Davidson* and *Frank M. Hall,* for plaintiff in error.

*Jefferson H. Broady* and *E. F. Pettis, contra.*

HOLCOMB, J.

The plaintiff's right of action is based on an alleged deposit of $5,000 made by one George W. Harmon in the defendant bank, plaintiff in error in this court. On a

former appeal the case was reversed, because, under the answer which, by stipulation, was permitted to be filed after the trial, the plea of payment was tendered, and the instructions failed to properly present to the jury that issue. *Tecumseh Nat. Bank v. Harmon,* 48 Nebr., 222, 226. Says Commissioner IRVINE in that opinion: "As the issues stood at this time, the petition was on a deposit. The answer was a general denial, and under this answer the defendant could not prove discharge by payment or otherwise; but under the answer as finally filed, while it was perhaps not very artificially drawn, the issue of payment was presented; and the question was not merely whether a deposit had been made on March 6, but it was whether the bank had discharged the liability thereby incurred by collecting the check and paying its proceeds to Russell & Holmes, in pursuance of plaintiff's direction." The issues respecting the alleged deposit and the discharge of the obligation thereby created remain substantially the same as in the first trial. After the case was reversed and remanded for further proceedings, the then plaintiff, George W. Harmon, died, and the action was revived and prosecuted in the name of the administrator of the estate of the decedent. A second trial was had, resulting in a disagreement of the jury. Thereafter the administrator entered into a compromise and settlement of the case by defendant paying $800, or $200 for each of the four heirs of the estate. A stipulation embodying the terms of the settlement was entered into and filed in the case, upon which judgment was rendered. The stipulation seems to have had the consent and support of three of the heirs, one of whom was also a stockholder in the defendant bank. The fourth heir, who was afterwards substituted plaintiff in the action, and who is now the defendant in error, at the same term of court at which the stipulation of settlement was filed and judgment rendered thereon, presented a motion and objections to the settlement, claiming that it was without her knowledge or consent and unauthorized, and violative

of her rights as one of the children of the deceased, an heir to the estate, and that the court was without jurisdiction to enter the order made without her consent, and prayed that the settlement and the judgment thereon be vacated and set aside, and that she be permitted to be substituted as plaintiff and prosecute the action in her own name, in the event the administrator refused or neglected so to do. After a hearing on the motion, the evidence taken at the time not being preserved in a bill of exceptions, the court sustained the motion as to the one-fourth interest in the cause of action set forth in the petition of the party objecting, upon condition that she pay or return to the defendant the $200 paid to the administrator as her proportion of the money paid under the terms of the settlement. This she did, and thereupon was permitted to, and did, prosecute the action to final judgment in her favor for one-fourth of the amount found due on the cause of action stated in the petition. From this judgment the defendant prosecutes error to obtain a review of the proceedings had in the trial court.

It is contended that the order substituting and permitting the defendant in error to prosecute the action in her own name, as was done, was erroneous, and that she is without legal capacity to sue; that the administrator alone can prosecute the action, involving, as it does, a claim due the estate of which he is the duly constituted and legal representative, and we are cited to the case of *Cox v. Yeazel*, 49 Nebr., 343 in support of the contention. In the first and second paragraphs of the syllabus in that case it is held: "Generally, an action to recover a debt payable to a deceased intestate must be brought by the administrator of the estate." "Such an action cannot be maintained by the heirs at law, unless there be no demands against their decedent ancestor, and there has been no administration, or the administration has been closed." Says NORVAL, J., in the opinion, page 349: "Counsel for plaintiffs below concede the general rule to be that the heirs cannot sue for assets belonging to

an estate of an intestate, but that such action must be brought by the administrator. They insist, however, that this rule has a general recognized exception, that when it is shown that the estate owes no debts and that no letters of administration have been granted, the title to the personal property and choses in action passes to the heirs and they may sue to recover the same, and distribute the assets among themselves without the expense of administration. That such doctrine exists and is abundantly sustained by the authorities, cannot be doubted. Where there are no liabilities or debts against the estate of an intestate, there is no necessity for increasing the expense of administration, and in such case the heirs may maintain an action to recover a debt owing the estate. * * * His estate had not been fully settled, nor is it alleged that even the costs of administration have been paid; hence, the administrator, and not the heirs, had the right to recover the debts due his intestate." The purpose of the rule unquestionably is to prevent different suits on the same cause of action, and it is also necessary because the creditors of an estate have an interest therein, which can be protected only by the personal representative, to whom they may look for the conservation of the estate and its assets until the debts against the same are satisfied and the costs of administration paid, after which no other interests are involved, save those of the heirs, who may then be allowed to prosecute in their own names an action for the recovery of a debt due the estate. There is a marked distinction between the case at bar and the one cited. The conditions are entirely dissimilar: By the stipulation of settlement the defendant agreed to and paid $200 to each of the four heirs of the deceased, except the defendant in error, and for her $200 was paid to the administrator for her use as the only remaining heir at law of said deceased. This payment she refused to authorize, accept or consent to. No creditors of the estate were concerned in the settlement. It was not made with the adminis-

trator for the purpose of swelling the assets of the estate
to pay debts.  These had evidently been provided for.
The right of the heirs at law were recognized, and as to
three of them the money, according to the terms of the
settlement, was paid direct, and their consent obtained
and authority recognized.  The money for the fourth
heir only was paid to the administrator and for her use
and benefit.  The defendant bank was a party to all these
proceedings and, having recognized the rights and au-
thority of the heirs at law in the premises, ought now to
be estopped from denying the substituted plaintiff's
right to repudiate the settlement as to her and prosecute
on her own behalf for her interest in the debt sued for.
The other heirs at law, having accepted the benefits of
the settlement so far as it affected them, are not now in
a position to claim anything from the defendant by rea-
son of its obligation on the alleged deposit.  The case
is thus taken out of the general rule respecting the right
of the personal representative to prosecute an action and
represent the interests of creditors and heirs in a deced-
ent's estate.  The right of recovery in the case at bar is
restricted to the interest of one only of the heirs at law.
The defendant has received from her the $200 paid for
her use to the administrator, and is thus estopped from
claiming a settlement of the controversy as to such in-
terest.  The evidence submitted on the motion to vacate
the order of dismissal entered on the stipulation of set-
tlement we are to assume is sufficient, and the order can
not now be subject to review.  We may presume, in the
absence of this evidence, that it was shown that the
estate was settled up, or so far that all necessary ar-
rangements had been made for the satisfaction of all
claims against the estate and the costs of administration,
leaving the subject of the present controversy purely one
affecting the rights and interests only of the heirs at law.
But even if this is not the case, the proceedings must be
regarded as an exception to the general rule.  By the
terms of the compromise the heirs, or the estate, were

receiving but little, an insignificant sum compared with the amount claimed in the petition. There was no substantial increase in the general assets of the estate. The sums paid went to the heirs at law. One heir disavowed the settlement, and certainly had the right to be heard in her own behalf, if not for the estate and all interests represented therein. The court found in her favor. This was equivalent to finding that the settlement was unwise and improvident, and prejudicial to her substantial rights or collusive and in fraud of her rights, and that the act of the representative of the estate was not such as to properly protect her interests. Thereupon she was given the right to prosecute in her own behalf. This, we think, was proper to be done under the circumstances of the case, and no error was committed in so doing. 15 Ency. Pl. & Pr., 639; *United States Trust Co. v. New York, W. S. & B. R. Co.*, 67 How. Pr. [N. Y.], 390; *Quackenbush v. Leonard*, 10 Pai. Ch. [N. Y.], 131; *Holley v. Glover*, 9 Pai. Ch. [N. Y.], 9; *Dugger v. Tayloe*, 60 Ala., 504, 517; Story, Equity Pleading, sec. 514; 1 Daniell, Chancery Pleading & Practice, 324.

It is asserted by plaintiffs in error that the cause of action as to the substituted plaintiff in the court below is barred by the statute of limitations. This is upon the theory that the act of substitution was equivalent to the commencement of a new action. We are unable to agree with counsel in this view of the case, and must hold that the action was but the continuation of the prior proceedings, and that during its pendency the statute did not run. There is no change of the cause of action pleaded in the original petition or abandonment thereof; nor is there a change of parties, except that the real party in interest was substituted for the administrator. The supplemental petition presents no amendment to the cause of action originally pleaded, but only matters occurring after the commencement of the action, and more particularly with reference to the action taken regarding the settlement, and which led to the substitution

of the plaintiff in place of the administrator, and grant-
ing her leave to prosecute from that stage of the pro-
ceeding forward. The issues as originally presented have
continued until the present to be identical, save as a set-
tlement with the three heirs mentioned has reduced the
demand against the defendant in that proportion. The
case is analogous to one of revivor or substitution of par-
ties by reason of change in interest during the pendency
of the action, and the same rule as to the running of the
statute would apply in each instance. The cases cited
(*Buerstetta v. Tecumseh Nat. Bank,* 57 Nebr., 504; *Wigton
v. Smith,* 57 Nebr., 299) are not in point. In each of the
cases mentioned the subsequent proceedings were held
to have worked an abandonment and discontinuance of
the cause of action originally begun, and the beginning
of substantially a new action, against which the statute
had run. These and similar cases cited are not authority
in the present case.

In the answer to the original and supplemental peti-
tion the defendant, as a first, second and third defense
pleaded in substance that the action was barred by the
statute of limitations; that the plaintiff had no right or
legal capacity to sue and prosecute the action, and that
the settlement heretofore referred to was a bar to a right
of recovery by the substituted plaintiff. In the instruc-
tions the court told the jury that regarding these first
three defenses they had nothing to do, but should deter-
mine only the issues as raised by the fourth defense.
This was the original defense interposed, and substan-
tially as pleaded in the answer filed after the first trial,
and which was construed as a plea of payment in the
opinion rendered in this court heretofore referred to. Ob-
jection is made to this instruction, because it took away
from the jury the right to find as a question of fact any
of the matters presented in the first three defenses.
·These questions, except that of the statute of limita-
tions, were disposed of by the rulings of the court made
during the pendency of the trial, and were not thereafter

the subject of litigation, upon which an issue of fact might be raised and tried to the jury. They had become matters *res adjudicata* upon the ruling of the trial court on the motion and objections interposed by the plaintiff to the settlement had and dismissal of the case by reason thereof. The question of the running of the statute of limitations, as raised by the answer, is a question of law only, and was properly ruled on by the trial court, as we have heretofore expressed ourselves. The only question proper to be submitted to the jury under the issues was the one of payment or discharge of the obligation by the defendant for the deposit which it is admitted came into its possession, and which it seeks to avoid by the plea that it was paid to the firm or bank of Russell & Holmes upon the authority and at the instance and request of the deceased.

To avoid its liability by reason of the deposit made by the plaintiff, the defendant bank sought to prove that the funds so deposited were paid to the firm or bank of Russell & Holmes by the authority of the deceased, under an agreement made by him with Holmes at the time of leaving with the bank the check drawn by deceased in its favor and against the Carson National Bank of Auburn, the proceeds of which check were received by and deposited in defendant bank. The testimony of Holmes, taken in the form of depositions, was offered in support of plaintiff's theory in this regard. Complaint is made because of the exclusion of that portion of the testimony which related to the original transaction claimed by defendant to have been had by and between the deceased and the witness Holmes when the deposit was made. The evidence was excluded on the ground that Holmes had a direct legal interest in the result of the action, and was therefore disqualified from testifying regarding such transaction under the provisions of section 329 of the Code of Civil Procedure. It is argued that the ruling of the trial court in excluding the evidence was correct for two reasons: first, because Holmes

·was, for quite a while after the transaction referred to, a stockholder. in the defendant bank, and therefore incompetent to testify; and second, that as a member of the firm or bank of Russell & Holmes he had such an interest in the result of the controversy as would also render his testimony incompetent.

It is disclosed by the record that at the time of the transactions in relation to the deposit and. the payment of the proceeds to the firm or bank of Russell & Holmes, Holmes was an officer and stockholder in the defendant bank. This was about March 6, 1891. In October, 1892, and prior to any litigation regarding the deposit, and long prior to the death of Harmon, the original plaintiff, Holmes severed his connection with the defendant bank, transferred all his interest therein, since which time he appears to have been in no wise connected with or interested in its affairs. An action was begun by the plaintiff in his lifetime on the alleged deposit, November 26, 1892, and after trial and judgment in the case, which upon error was reversed and the case remanded, the plaintiff in the action, in September, 1896, died. It is under these facts that we are called upon to decide whether, upon a second trial by the representatives of the deceased plaintiff, the testimony of the witness Holmes is rendered incompetent by reason of the provisions of the section referred to. Had the transfer of interest been made subsequent to the death of the original plaintiff, we think the effect of the operation of the statute would be to disqualify the witness under the rule announced in *Magenau v. Bell*, 13 Nebr., 247, where it is held that a transferrer of a claim against an estate can not, by reason of the transfer, qualify himself to testify regarding a transaction as to which he would be incompetent to testify because of the section referred to were it not for such transfer. It is by this rule held.to be against the policy of the law to permit the statute to be evaded and its purposes thwarted by a transfer of interest in a matter which may be a subject of litigation. He is, notwithstanding the transfer,

deemed to have a legal interest in the result of the litigation, which brings him within the scope and object of the statute. But can it be said that a person who has parted with all interest in the subject matter of litigation before the death of any of the parties in interest, and before the statute can be invoked or become effective, is rendered incompetent to testify regarding a transaction with a party who afterwards dies, and whose representatives are parties to the action? Is it the intention of the statute to exclude the evidence of such witness? In *Sorensen v. Sorensen*, 56 Nebr., 729, it is held: "The incompetency of one as a witness, or the incompetency of his evidence, must be found in express law and not based on strict or technical construction. If there is reasonable doubt, the witness and the evidence are competent." The exclusion of evidence under consideration is based on the statute, which declares that "no person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness" etc. Code of Civil Procedure, sec. 329. The ground of incompetency is solely one of legal interest in the result of the suit. To render the testimony of the witness incompetent it must appear that he has a direct legal interest in the result of the suit. "The true test," says RAGAN, C., in *Sorensen v. Sorensen*, *supra*, "is, as it was at common law, will the witness gain or lose by the direct legal operation and effect of the judgment or final order rendered in the proceeding in which the testimony is offered." 1 Greenleaf, Evidence, sec. 390. Tested by these rules, it does not appear that the witness Holmes had such an interest in the result of the suit growing out of his prior connection with the defendant bank as would preclude him from testifying as a witness in the case to the transactions or conversations had with the deceased regarding the disposition to be made of the funds on deposit with defend-

ant bank.  At the time the controversy arose his former interest in the bank was wholly divested, and at the time of the death of the plaintiff thereafter his relation to the subject matter of the controversy was that of a witness wholly disinterested; and at no time since the death of Harmon has he had any legal interest in the result of the action begun prior thereto.  We conclude, therefore, that the witness was not rendered incompetent by reason of his connection with the bank at the time the transaction was entered into and for a short time thereafter.

We are next to inquire whether, by reason of the witness's connection with the bank of Russell & Holmes, of which he was a member, and to whom it is alleged the deposit was paid on the authority of Harmon, he was disqualified from testifying to the transaction between him and the deceased inquired about.  Under the issues, the bank of Russell & Holmes, and not defendant bank, was alleged to be the debtor of Harmon for the funds deposited by him in the defendant bank.  This Harmon and his representatives after him denied, claiming defendant bank as his debtor, and denying any transaction with the firm of Russell & Holmes.  If the judgment pronounced in the pending action will be legal evidence for or against the witness in another action, then he has a direct legal interest in the result of the suit, rendering his testimony incompetent, under the provisions of the statute quoted.  1 Greenleaf, Evidence, sec. 390.  *Sorensen v. Sorensen, supra; Eisenlord v. Clum*, 27 N. E. Rep. [N. Y.], 1024.

It is to be noted that the judgment in the present case would not be binding on the witness or the firm of which he was a member, as to its liability for the money alleged to have been loaned and paid to the firm as the funds deposited by Harmon.  The judgment, however, is evidence that, in the present proceedings, the bank has been adjudicated to be the debtor of Harmon for the money deposited, and liable to him or his representatives therefor, and that Harmon and his representatives, having

50

obtained the judgment, are estopped from claiming or recovering anything from the firm of Russell & Holmes for the moneys by it received from the defendant bank as being the funds deposited by Harmon and belonging to him. It is certainly competent evidence for the purpose of releasing the firm of Russell & Holmes from liability to Harmon and his representatives. Whatever liability exists against the firm of Russell & Holmes may by the evidence of the judgment be shown to be in favor of the defendant bank, or those claiming through it. Whether Harmon or the defendant bank shall be proven to be the creditor of the firm of Russell & Holmes is a matter which may, in many ways, be of vital importance to them. It is quite possible that knowledge of the running of the statute of limitations pending litigation makes Holmes entirely willing that a judgment should be obtained exonerating the bank from liability and indirectly charging the firm of which he was a member therefor. Other circumstances connected with a change of creditors and debtors also enter into the question of interests to be affected by the judgment as evidence in another action. Says NORVAL, J., in *Kroh v. Heins*, 48 Nebr., 691, 698: "It is not material on which side of the case her greater interests lie, since her competency as a witness is not to be determined by the weighing of her conflicting interests. A direct legal interest in the event of an action disqualifies a witness from testifying to transactions or conversations with the deceased, whether such interest be great or small." *Wylie v. Charlton*, 43 Nebr., 840.

In an action against the firm of Russell & Holmes on their liability for the money paid them, or for their use in canceling certificates of deposit held by defendant bank, claimed to have been the amount deposited by Harmon, the judgment in the present case would be competent evidence for the purpose of proving its rendition in favor of Harmon's representative, and its satisfaction by the bank. 2 Greenleaf, Evidence, sec. 116; 1 Green-

leaf, Evidence, sec. 525; *Eisenlord v. Clum, supra.* Says Greenleaf, first volume, section 538, speaking of the admissibility of judgments as evidence in a case: "It is therefore the only proper legal evidence of itself, and is conclusive evidence of the fact of the rendition of the judgment and of all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered as evidence." And in 1 Wharton, Law of Evidence, sec. 823, illustrating the rule as to the admissibility of judgments as evidence and for what purpose: "A judgment by A against B, for instance, in a private claim, is not admissible in a suit by A against C, as proof of any direct indebtedness from C to A; but if in A's suit against C it becomes relevant to show that A had obtained and collected a judgment against B, then the record of the judgment in the suit of A against B is admissible for this purpose. * * * Thus, a judgment establishing the relationship of debtor and creditor between A and B may be afterwards used collaterally to show *prima facie* such relationship." And in 2 Black, Judgments, sec. 604, it is said: "And so when the money sought to be recovered under a count for money paid has been paid under a judgment against the plaintiff, the record of the judgment is always admissible to prove the fact of the judgment and the amount so recovered." To the same effect are Freeman, Judgments, sec. 416; 7 Am. & Eng. Ency. Law, p. 76. The conclusion proper to be reached, therefore, is that the witness, by reason of being a member of the firm of Russell & Holmes, had such a direct legal interest in the result of the suit as would render his testimony incompetent under said section 329 of the Code, and its exclusion by the trial court was without error.

The defendant also offered to prove by two other officers and stockholders of the bank, one the president and the other the cashier, that they heard a conversation between Holmes, then president, and the deceased, in which Holmes stated to the deceased that he, the deceased,

knew that the loan was made to Russell & Holmes, and that the Tecumseh National Bank had nothing to do with it; and that the deceased made no denial thereto during the entire conversation. An examination of the record discloses that the purported conversation was between the officers and stockholders of the bank, on the one side, and the deceased on the other, in which different ones took part, and as to the officers of the bank, all should be regarded as participants. Being stockholders and officers in the bank, they had a legal interest in the action, and they were rendered incompetent to testify regarding such conversation. Whether the statement alleged was made by Holmes or other members of the party who were present at the time, all, so far as the record goes, stood in a representative capacity, acting in the interest and on behalf of the bank, so that their right to testify to the conversation does not come within the rule laid down in *Kroh v. Heins, supra*, where it is said: "Within the light of the authorities already mentioned, the conclusion is irresistible that Mr. Morton had such an interest in the outcome of the suit as to disqualify him from giving the contents of the letters written to himself by Von Heilen, since the reception of such letters, within the meaning of the statute, constituted transactions between the witness and the deceased. Doubtless, his testifying to the contents of the letter alleged to have been received by Mrs. Heins was not an infringement of the statute, as it merely excludes proof of transactions and conversations between the witness and the deceased. The provisions of section 329 do not apply where the transaction or conversation was not between the witness and the decedent, but between the latter and a third person"; citing a number of cases. It was not error to sustain the objections interposed to the admission of the testimony of the witnesses regarding the alleged conversation with the deceased.

It is further claimed that the evidence should have been admitted, because during the trial certain of the

testimony given by the deceased during his lifetime, when on the first trial of the case, was received in evidence. It appears that the defendant, for the purpose of proving certain parts of its defense, offered in evidence some of the testimony given by the deceased on the former trial. For the purpose of cross-examination only the plaintiffs offered certain other portions of the testimony of the deceased witness, but not regarding the transaction inquired about. In rebuttal some further of the same testimony was offered. None of the evidence offered by reading portions of the testimony of the deceased as cross-examination or in rebuttal can be said to come within the provisions of the Code, excluding the testimony of those having a direct legal interest in the result of the action, "unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation, or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation." We are disposed to the view that the introduction of this testimony, in the manner it was introduced, did not open up the subject, or remove the bar of the statute, so as to permit the introduction of the testimony sought, for the purpose of proving the transaction originally had with the deceased, or the purported conversation with relation thereto.

Complaint is made because the court instructed the jury that "unless you find further that the defendant has proved by a fair preponderance of the evidence that defendant has paid to George W. Harmon or the bank of Russell & Holmes on the authority of George W. Harmon the sum of $5,000 and interest, if you find that interest was to be paid by defendant bank, you must find for the plaintiff." We find nothing worthy of severe criticism in this instruction. In substance, it required the defendant to prove, by a fair preponderance of the evidence, the defense pleaded in its answer. This, under the issues, was entirely proper.

Other instructions given, which were excepted to, are also criticised as being prejudicially erroneous to the defendant. These instructions were pertinent to the issues as presented by the pleadings, and we find no substantial merit in the criticisms thus made. The objections are based primarily upon the assumption by defendant's counsel that the question of whether a contract of deposit between the defendant bank and the deceased was actually entered into, is one of the issues in the case. According to the argument of counsel, the defendant bank never received the money as a deposit, acting only as the agent of the deceased in transferring his money in the Carson National Bank to the firm or bank of Russell & Holmes, to whom, it is claimed, he loaned the money. This view of the case can not be maintained, and is a wrong conception of the issues as made by the pleadings. This question was disposed of in the former opinion, in which it was held that the answer presented a plea of payment, which has become the settled law of the case. It is now too late to urge that the issue is different. The instructions conformed to the pleadings, as construed heretofore in this court, and were properly given. The pleadings and the evidence established a contract of deposit with the defendant bank, and to avoid its liability it was incumbent on the bank to prove payment to the firm or bank of Russell & Holmes, as alleged, under the authority and at the instance and request of the deceased.

Some complaint is made because of the wording of some of the instructions, it being claimed that they evidence a feeling upon the part of the trial court favorable to plaintiff and prejudicial to the defendant. It is very difficult to draw an instruction that is entirely satisfactory to both parties to the case, and we think in this instance no more reason exists for objection to the instruction than is ordinarily the case where the law is construed to be other than that contended for by counsel.

Some other objections are presented, not, however,

well taken, regarding both the instructions and the evidence, which we have considered, but which we deem of minor importance, and have not reviewed them in detail.

Finally, it is insisted that the evidence does not support the verdict. From an examination of the record in the case, we think the evidence under the issues justifies the finding of the jury and supports the judgment in favor of the plaintiff. Briefly, it is disclosed that the deceased deposited with the defendant bank $5,000. Whether the deposit of the check for $5,000, drawn in defendant's favor against the Carson National Bank, is construed as for collection, or a deposit, we regard as immaterial under the evidence, which conclusively shows that the money on the check was received and credited to the defendant bank, and of the entire proceeds of which it had the benefit. This is practically admitted by the pleadings, and regarding which there is no conflict in the evidence. The defendant, however, contends, that at the request and on the authority of the deceased, it paid the money to the firm or bank of Russell & Holmes. Holmes was at the time the president of the defendant bank, as well as one of the parties concerned in the other institution to which the defendant bank was successor. On this phase of the controversy, the burden was on the defendant to establish its rightful disposition of the deposit as contended by it; and on this issue the case was fairly submitted to the jury, who found against its contention. We are of the opinion that the evidence, if anything, preponderates in favor of the finding of the jury. The circumstances clearly point to the defendant bank as being alone the party with whom the deceased dealt at the time of the making of the deposit, and justifies the inference that with it alone the entire transaction related; that the firm of Russell & Holmes was regarded as a defunct institution after it was merged in the defendant bank, which became its successor, or that it existed only for the purpose of winding up its affairs.

While considerable stress is laid on the fact that after the deposit the deceased received an ordinary bank deposit book of the kind used by the firm or bank of Russell & Holmes, it was only a circumstance to be given due weight, which was doubtless done, as tending to confirm the theory of the defense. The jury might very properly, as they doubtless did, conclude that this book was used as evidencing the deposit, because the stationery, blanks, books, etc., had passed to the defendant bank as successor of the firm of Russell & Holmes. That this circumstance was considered as but slight evidence may be fairly concluded from the fact that the deceased was illiterate, and scarcely able to read or write. It is not at all improbable that he would fail to closely scrutinize the additional evidence given him of his deposit, or attach special importance to its form, but rather depend upon the officers of the bank to do what was required to effectuate and carry out the agreement of deposit according to its terms.

The evidence justifies the verdict, and no prejudicial error being apparent on the record, the judgment should be, and is, therefore,

AFFIRMED.