ELIZABETH RIDDELL ET AL., APPELLEES, v. LILLIAN RIDDELL, APPELLANT, IMPLEADED WITH DORETHA RIDDELL.

FILED DECEMBER 2, 1903.   No. 13,133.

1. **Witness:** EVIDENCE: COMPETENCY. "Since the amendment of 1883, section 329 of the code does not render a party adversely interested to the representative of a deceased person incompetent as a witness in the action, but only renders his testimony as to transactions and conversations with the deceased incompetent." *Sharmer v. McIntosh,* 43 Neb. 509.

2. **Relinquishment:** EVIDENCE. Evidence *held* to be sufficient to uphold finding of oral relinquishment of further share in father's estate by appellant's father.

3. ———: *Held,* That such a relinquishment to be effectual as to lands must be in writing signed by the party to be charged.

4. ———: STATUTE OF FRAUDS. Receipt and retention of lands from the father in consideration of such an agreement, is not such a part performance of it as to take it out of the statute of frauds.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed and dismissed.*

*Henry H. Wilson* and *Elmer W. Brown,* for appellant.

*J. W. Deweese, Webster S. Morlan* and *Frank E. Bishop, contra.*

HASTINGS, C.

In 1878, James Riddell and Elizabeth Riddell, his wife, of Lancaster county, Nebraska, by warranty deed, reciting a consideration of $600 "in hand paid," conveyed 80 acres of land in the same county to David D. Riddell, a son. In 1881, David D. Riddell died, leaving a daughter, Lillian. In 1882, the grandfather, James Riddell, died seized of the 120 acres of land in question in this action. The following year his widow married the other plaintiff, David A. Riddell. They have occupied the premises ever since.

James Riddell had five sons, of whom all but David D. survived him. The surviving sons have all conveyed their interest in the land to the mother. The granddaughter, Lillian, now 24 years old, refuses to convey; and this action is brought by the grandmother and her present husband to quiet title in the 120 acres of land against her. This is on the alleged ground that the conveyance to David D. in 1878 was not really for any money consideration but was, in fact, in conisderation of the relinquishment by David D. of all further share in his father's estate, and was in the nature of an advancement; that this agreement by David D. is binding upon his daughter, although her father died before the grandfather, and therefore without any right in the grandfather's estate vesting in him.

The granddaughter denied there was any such relinquishment, and claimed one-fifth interest in the land in right of her father. The trial court found the grandmother's allegations of the agreement to be true, and quieted title in her to the 120 acres of land. From this decree Lillian Riddell appeals. The sufficiency of the proof of an oral agreement by her father to relinquish any further share in the grandfather's estate is denied, and also the validity of such an oral contract, if it is found to be established.

As to the fact of the conveyance to David D. being in

the nature of an advancement, and in consideration of his being satisfied to give up any further share in his father's estate, there is first the testimony of Frank F. Riddell. He testifies that in 1878, when he was in his eighth year, it was talked over in his presence by his father and his brothers, David D. and William W., that the father, being in bad health, should make some arrangement of his affairs; that the father asked David D. if it would be satisfactory for the latter to take the property proposed to be deeded to him, 80 acres of land, in full of his share in the father's estate. He agreed to the arrangement and the land was conveyed to him. William W. also got 80 acres of land. The witness states that to his "best knowledge and belief" his brother David D. gave nothing for the land except the relinquishment of claim on the father's estate, and on the next day after this family conference David D. remarked, as he was about starting for Lincoln, that they were going to have the matter fixed up.

William W. testifies to the transaction, and to the same general effect, but more in detail, he being 17 years older than Frank. He knows that he and David D. each got 80 acres of land, which was to be in full of their share of the father's estate. His own he got by trading to his father for it another tract of land, toward whose purchase the father had helped him with $600.

Wiley Riddell, another brother, says he was only about 9 years old, and that he only knows, in a general way, that the father gave 160 acres of land to William W. and David D.—80 acres to each of them.

Newton N. Riddell, about 16 years old at the time, testifies to the same general state of facts as to the land conveyed to David D. and William W. He also testifies to various subsequent statements by the father as to what had been done, and to subsequent statements by David D. Riddell as to the arrangement by which the latter got his 80 acres of land.

The wife of this last witness testifies also to hearing David D. state the same things in 1879 as to the arrange-

ment by which he obtained the 80 acres of land. She also testifies to subsequent statements of the father, James Riddell, to the same effect. These latter statements are no doubt hearsay and incompetent.

All this evidence comes from the brothers and the wife of one of them. It is objected that they have an interest as heirs, and that, the action being against a representative of a deceased person, their testimony as to transactions with such person is incompetent.

This is an action to quiet title in land brought by the mother and her hlusband against this granddaughter. Before it was instituted all of these witnesses made quit-claim deeds to the mother. These deeds were never recorded, but the plaintiffs' attorney says that they were, some weeks before the commencement of this action, delivered to him, as her agent, and have been in his possession since. Can parties, who are disqualified from testifying because of interest, render themselves competent by transferring such interest after the death of the other party? If this can be done, then there is small force in the statute. By simply selling his claim, without recourse, the witness can always qualify himself to prove it up.

In *Magenau & Co. v. Bell,* 13 Neb. 247, the evidence of a member of a firm, who had assigned his interest pending the action, was excluded. In *Tecumseh Nat. Bank v. McGee,* 61 Neb. 709, a person, who had long before the death of the other party wholly severed his connection with a firm, was held competent as a witness for the remaining members of the firm against an administrator in whose name the action was revived. The court however, say:

"Had the transfer of interest been made subsequent to the death of the original plaintiff, we think the effect of the operation of the statute would be to disqualify the witness."

That is, it seems, where death has established a bar to an interested witness's testifying, such bar can not be removed by his merely assigning his interest.

In the present case David D. Riddell had been more than 20 years dead when the deeds were made, by which it was sought to render these witnesses competent to testify against his representative. It would seem then clear that, as to transactions and conversations had with him by these witnesses, their testimony should not be taken. There is not the same objection to their testifying to transactions in their presence between David D. Riddell and his father. *Sharmer v. McIntosh*, 43 Neb. 509.

In our opinion, there is enough competent testimony as to transactions between David D. and his father, to overthrow the recital of the deed, considered merely as a solemn statement and admission of the fact of a money consideration, and enough to establish the oral agreement claimed by plaintiff. Is that agreement valid and binding upon the daughter and heir of David D. Riddell?

Three reasons are advanced by the granddaughter's counsel why the agreement, even if found to exist, should not be upheld; that it is contrary to the statute of frauds, as an attempt to transfer an interest in the 120 acres of land in question by an oral agreement; that it is contrary to our statute as to advancements, which requires that advancements be stated in writing by the ancestor to be such, and no such writing exists; that it was an attempt to transfer a thing not *in esse,* a right in the father's property which had never vested in the son; and nothing passed by it in any event.

Dealing with the last named reason first, there seems no doubt that contracts of this kind are enforceable in equity. Though they relate to no existing right and convey nothing of themselves, yet, when the right does accrue, they are treated, in equity, as valid agreements to convey it, if they are clearly established and untainted with fraud. 3 Pomeroy, Equity Jurisprudence (2d ed.), sec. 1286. If they concern lands, however, they must be, like other agreements relating to lands, in writing or they are unenforceable. *Green v. Hathaway*, 36 N. J. Eq. 471.

This doctrine of the validity in equity of such an agree-

Riddell v. Riddell.

ment and of the necessity that it be in writing is re-affirmed in *Brands v. De Witt,* 44 N. J. Eq. 545, 6 Am. St. Rep. 909.

This contract, then, is of no force unless it is taken out of the statute of frauds by part performance. The part performance which is claimed is that the land which was conveyed to David D. Riddell, in consideration of the agreement, was placed in his possession at once in 1878, and has remained in him and his successors in title since. It is true that the 120 acres of land in question in this action have been, since the father's death, and are now, in the possession of the mother. This possession, however, is in no way referable to the contract, but to the widow's right by homestead and otherwise. The part perform-ance claimed is only, that the full consideration for this agreement was delivered to and has been retained by the other party. But payment in full of the consideration is not part performance of a contract which will suffice to take it out of the statute of frauds. Browne, Statute of Frauds (3d ed.), secs. 461-465. This doctrine is stated by Mr. Browne as no longer open to question, and cases hold-ing it in nearly all the states are cited in 23 Century Di-gest, col. 2408. In *Baker v. Wiswell,* 17 Neb. 52, it is said that the part performance necessary to take the con-tract out of the statute of frauds is delivery of possession in whole or in part. In that case, it is true, the only part performance found was payment of a portion of the pur-chase price which was judged insufficient. And in *Bigler v. Baker,* 40 Neb. 325, continued possession by a tenant is held to be not sufficient, but the possession must be referable to the contract, to take the latter out of the statute. The Nebraska cases, *Connor v. Hingtgen,* 19 Neb. 472; *Hanlon v. Wilson,* 10 Neb. 138, and *Dickman v. Birkhauser,* 16 Neb. 686, cited by appellees, indicate no different rule. In the first, the answer admitted the con-tract and was held to waive the statute. In the other two, full possession was given under the contract of the prem-ises involved.

There are cases cited as holding that a contract to release or convey lands in consideration of other lands will be enforced, though resting in parol, if one party has conveyed and delivered the lands, on his side, and the other party is retaining them and refusing to convey. There are *dicta* in various cases that this is sufficient, as in *McClure v. Otrich*, 118 Ill. 320. In this last case, however, possession was given on the one side and was retained on the other, pursuant to the contract. We are not cited by appellees to any case where lands were conveyed and possession given, in reliance upon a mere verbal agreement, wholly future in its character, on the other side, to release or convey other lands, which is held enforceable. Where both conveyances were intended to be contemporary and part of one transaction, the making of one might be part performance of the whole. In the present case, however, the conveyance of the 80 acres to David D. was simply the consideration for the oral relinquishment. It was in no sense a part performance of such relinquishment.

It seems undesirable to introduce any fresh uncertainties into our laws of descent and distribution. To leave to interested parties, by oral testimony, to impeach the recitals of an ancestor's deed, after 25 years, and create, by parol evidence, a relinquishment by the father of this granddaughter, which shall bar her of participation in the grandfather's estate, seems to involve a dangerous relaxation of the statute of frauds. We do not think that courts of equity should go so far as the supreme court of Ohio in *Needles v. Needles*, 7 Ohio, St. 432, 70 Am. Dec. 85, and hold such an agreement absolutely unenforceable, even if in writing. But there seems no reason for departing from the requirement of the New Jersey cases, cited above, that the agreement, if it is to affect lands, must be in writing.

It is recommended that the decree of the district court be reversed and the action dismissed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the action dismissed.

REVERSED.